# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES BRENNAN,<br>         Plaintiff,<br><br>         v.<br><br>CITY OF PHILADELPHIA,<br>MAYOR JAMES F. KENNEY,<br>CHRISTINE DERENICK-LOPEZ, and<br>JANE SLUSSER,<br>         Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-1417 |

DuBois, J.                                                                                                                September 21, 2018

## **M E M O R A N D U M**

### I. INTRODUCTION

This retaliation case arises out of plaintiff's alleged wrongful termination by defendants, the City of Philadelphia, Mayor James F. Kenney, and two city officers—Christine Derenick-Lopez and Jane Slusser. Plaintiff, Charles Brennan, claims defendants retaliated against him for voicing concerns over several perceived unlawful practices, including racially discriminatory hiring and violation of public contract award requirements. Plaintiff asserts retaliation claims under 42 U.S.C. §§ 1981 and 1983 and the Pennsylvania Whistleblower Law, 42 Pa. Cons. Stat. §§ 1421 *et seq.*, against all defendants and a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e) *et seq.* ("Title VII"), against the City of Philadelphia. Presently before the Court is defendants' Second Motion to Dismiss. For the reasons that follow, the motion is granted in part and denied in part.

### II. BACKGROUND

The facts below are drawn from plaintiff's First Amended Complaint ("Amended Complaint") and the documents on which it is based. Those facts are as follows.

In January 2016, plaintiff was hired as the City of Philadelphia's ("City") Chief Information Officer ("CIO"), responsible for overseeing technology matters for City. First Am. Compl. ¶ 19. Previously, he worked for City in its police department for more than 30 years, retiring in 2006. *Id.* ¶¶ 14–15. As CIO, he reported to, and was supervised by, Christine Derenick-Lopez ("Lopez"), City's Chief Administrative Officer. *Id.* ¶ 20. Over the next two years, plaintiff reported a series of concerns to defendants and was ultimately terminated in January 2018. Plaintiff asserts he was wrongfully terminated for complaints he made about four alleged practices by defendants: (1) racially discriminatory hiring, (2) failure to follow public bidding process requirements, (3) failure to act on a City contractor's missed deadlines, and (4) irrational and discriminatory requests that plaintiff attend gender sensitivity training. The circumstances surrounding plaintiff's complaints and termination, as alleged in his Amended Complaint, are outlined below.

In November 2015, after Mayor James F. Kenney ("Kenney") was elected, he began a hiring initiative to diversify City's workforce. *Id.* ¶¶ 17, 23. To implement this initiative, City's Chief Diversity Officer, Nolan Atkinson ("Atkinson"), met with plaintiff multiple times in 2016 and 2017 to address the racial composition of plaintiff's office. *Id.* ¶ 33. At these meetings, Atkinson informed plaintiff his department was "too white," that his "white numbers were moving in the wrong direction," and that "there were too many Asians." *Id.* ¶ 34. He directed plaintiff to diversify his hires to reflect the demographics of Philadelphia—namely, by hiring more African-American and Hispanic individuals. *Id.* Plaintiff responded that he hired based on skill and experience rather than race. *Id.* ¶ 35.

Believing that these hiring directives were unlawfully discriminatory, plaintiff complained to Lopez, who was required by her duties as Chief Administrative Officer to

communicate concerns of discrimination to defendants Kenney and Jane Slusser ("Slusser"), Kenney's Chief of Staff. *Id.* ¶¶ 10, 35–36. These complaints were not addressed by Kenney, Slusser, or anyone else. *Id.* ¶ 37. Instead, Lopez insisted that plaintiff diversify his hires and stated more than once that it would be "good for [his] career" if plaintiff hired more minorities. *Id.* ¶¶ 37–38. On occasion, Lopez told plaintiff it was a shame the best candidate was white, because they needed to hire an African-American for the position. *Id.* ¶ 42. Plaintiff continued to object to these hiring practices up until his termination on January 12, 2018. *Id.* ¶ 44.

Second, plaintiff alleges retaliation for complaints he made about a contract that City entered with Axon Enterprises, Inc. In 2017, following a successful pilot program, City decided to equip 4,000 patrol officers with body cameras purchased from Axon. *Id.* ¶ 47. Before entering into the contract, City was required to follow public contract award requirements and obtain competitive bids from other vendors, conduct due diligence, and engage in cost-benefit analysis to ensure the contract was the best deal for City. *Id.* ¶ 50. Technology contracts with City, like this one, fell within plaintiff's responsibilities as City's CIO. *Id.* ¶ 47. Plaintiff had several concerns about the contract with Axon, including the substantial expenditure for the body cameras, violation of public bidding process requirements by City, City's failure to conduct due diligence and a cost-benefit analysis, and City's plan to bypass plaintiff's approval. *Id.* ¶¶ 50–53. Accordingly, plaintiff objected to the agreement, and because this contract fell within his purview as CIO, he was initially able to prevent City from proceeding with the contract. *Id.* ¶¶ 50, 53. In addition, plaintiff reported his concerns to Ellen Kaplan, City's Chief Integrity Officer, who communicated them to Kenney and Slusser. *Id.* ¶ 54.

Plaintiff was met with animosity for his complaint, and City "warned" plaintiff for his objection."[1] Thereafter, City admitted to the press that it did not follow the appropriate public bidding process. *Id.* ¶ 56. However, City neglected to follow bidding requirements and eventually proceeded with the $12 million contract with Axon, despite plaintiff's objections. *Id.* ¶ 53.

Third, plaintiff alleges retaliation for his complaints about Comcast's failure to meet certain deadlines required by its cable-franchise agreement with City. Comcast had a contract with City that required it to perform work, including repairing dangling wires and providing proper grounding, within certain deadlines. *Id.* ¶¶ 60–61. According to the contract, if Comcast missed any of its deadlines, City was entitled to compensation. *Id.* ¶ 61. Comcast claimed it was compliant with all of its deadlines as of December 31, 2017. *Id.* ¶ 62.

As CIO, plaintiff was responsible for overseeing cable-franchise agreements, like this one, for City. *Id.* ¶ 58. Plaintiff believed Comcast had not met its deadlines and that it sought to avoid penalties by designating more than 250,000 properties that it failed to service as "denial of access" properties, meaning Comcast was unable to access the properties for remediation. *Id.* Worried the City would lose thousands of dollars by ignoring these violations, plaintiff raised this issue with Lopez at one of their weekly meetings. *Id.* ¶ 66. Lopez directed plaintiff to "take it easy" on Comcast, to not upset Comcast, and to go along with its "denial of access" designations. *Id.* ¶ 64. Lopez also took notes about plaintiff's concern so that she could discuss it with Kenney and Slusser at their next meeting. *Id.* ¶¶ 66–67. Lopez later informed plaintiff that his complaint "caused a great deal of concern" in Kenney's office and that Kenney and Slusser did not want plaintiff to take any action that would upset Comcast. *Id.* ¶¶ 67–68.

---

[1] It is unclear, from plaintiff's Amended Complaint, who issued this warning or what was said.

Finally, plaintiff alleges retaliation for his complaints about being asked to attend sensitivity training. In late 2017, Lopez told plaintiff he was insensitive to gender in the workplace, citing a few of plaintiff's comments as examples, and recommended that plaintiff undergo sensitivity training. *Id.* ¶ 70. Plaintiff did not attend sensitivity training because he believed it was unfair, his comments were not offensive, only white male management was directed to attend such training, and Lopez had also behaved insensitively in the workplace by (1) making hiring decisions based on race and gender, (2) making inappropriate jokes, and (3) swearing. *Id.* ¶¶ 71–72. Plaintiff also complained to the Human Resources Department that City was discriminating by only asking white male management to attend sensitivity training and that asking him to do so was retaliation for his objections to City's discriminatory racial hiring. *Id.* ¶ 72. In December 2017, Lopez again suggested that plaintiff attend sensitivity training, and plaintiff again refused and stated that it was retaliatory, noting several other individuals who were not directed to attend training, including Atkinson, who had openly stated there were "too many whites," and Lopez. *Id.* ¶ 73.

On or about January 12, 2018, two weeks after his complaints about the Comcast contract and sensitivity training, plaintiff was called into a meeting with Lopez and Slusser and was terminated. *Id.* ¶¶ 21–22, 69, 74. Lopez and Slusser told plaintiff that Kenney acquiesced in plaintiff's termination. *Id.* ¶ 74. Plaintiff had not previously received any formal discipline. *Id.* ¶ 75. Plaintiff was offered a severance package in exchange for waiving all discrimination and retaliation claims against City, but plaintiff declined. *Id.* ¶ 75. Employees of City who are terminated for cause or misconduct are not entitled to severance compensation under City policies. *Id.* ¶ 76. Thereafter, Kenney's spokesperson communicated to the press that Kenney let plaintiff go to seek a "change in leadership." *Id.* An article published online stated,

5

"Philadelphia Mayor Jim Kenney has decided to part ways with Chief Information Officer Charles Brennan, the city confirmed late last week." Pl.'s Mem. Law Resp. to Defs.' Partial Mot. Dismiss 9; Pl.'s Mem. Law Ex. B.

Plaintiff filed a Complaint in this Court on April 4, 2018, asserting retaliation claims under 42 U.S.C. §§ 1981 and 1983 and the Pennsylvania Whistleblower Law against Kenney, Lopez, Slusser, and City, and a retaliation claim under Title VII against City. Defendants filed a Motion to Dismiss for Failure to State a Claim on June 4, 2018. On June 18, 2018, plaintiff filed a First Amended Complaint. Plaintiff's Amended Complaint alleges five causes of action: retaliation under 42 U.S.C. § 1981 against all defendants (Count I), retaliation under Title VII against City (Count II), First Amendment retaliation under § 42 U.S.C. § 1983 against all defendants (Count III), retaliation under the Pennsylvania Whistleblower Law against all defendants (Count IV), and retaliation under the Fourteenth Amendment through 42 U.S.C. § 1983 against all defendants (Count V).

On July 3, 2018, defendants filed a Second Motion to Dismiss for Failure to State a Claim, asking this Court to dismiss Counts I, III, and V against Kenney; Count V against all defendants; and Count IV against Kenney, Lopez, and Slusser. On July 17, 2018, plaintiff filed a Memorandum of Law in Response to Defendants' Partial Motion to Dismiss. The motion is thus ripe for review.

### III. LEGAL STANDARD

"The purpose of a 12(b)(6) motion to dismiss is to test the legal sufficiency of the complaint," not the merits. *Nelson v. Temple Univ.*, 920 F. Supp. 633, 634 n.2 (E.D. Pa. 1996). To survive a motion to dismiss, plaintiff must allege "sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678

6

(2009) (internal citations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In assessing the plausibility of the plaintiff's claims, a district court first identifies those allegations that constitute nothing more than mere "legal conclusions" or "naked assertion[s]." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 564 (2007). Such allegations are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. The court then assesses "the 'nub' of the plaintiff['s] complaint—the well-pleaded, nonconclusory factual allegation[s]"—to determine whether it states a plausible claim for relief. *Id.* at 680. "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## IV. DISCUSSION

Defendants do not challenge plaintiff's Title VII or Pennsylvania Whistleblower Law claims against City, nor do they challenge plaintiff's § 1981 and First Amendment retaliation claims under § 1983 against Slusser, Lopez, and City. In their partial Motion to Dismiss, defendants make three arguments: (1) plaintiff's retaliation claims under § 1981 and the First and Fourteenth Amendment under § 1983 fail against Kenney, because plaintiff failed to plausibly allege Kenney's connection to his termination; (2) plaintiff's Fourteenth Amendment retaliation claim under § 1983 is unsupported by case law in the Third Circuit and should be dismissed against all defendants; and (3) plaintiff's Pennsylvania Whistleblower Law retaliation claims against Kenney, Slusser, and Lopez must fail, because these individuals are not "employer[s]"

7

within the law.  Defs. Mem. Law Supp. Second Mot. Dismiss, ECF No. 7, at 3–4.[2]  The Court addresses each of defendants' arguments below.

### A. 42 U.S.C. §§ 1981 and 1983 Retaliation Claims against Kenney

First, defendants ask the Court to dismiss all retaliation claims against Kenney under 42 U.S.C. § 1981 and the First and Fourteenth Amendments under § 1983, arguing plaintiff has not plausibly alleged Kenney's connection to his termination.  Defs. Mem. Mot. Dismiss 3, 6.  Specifically, defendants contend plaintiff has not sufficiently alleged Kenney made the decision to terminate plaintiff or that Kenney was aware the decision to terminate plaintiff was retaliatory.  *Id.*  The Court will address each of these arguments in turn.

To prevail on a retaliation claim under 42 U.S.C. §§ 1981 and 1983, a plaintiff must prove that (1) he engaged in a protected activity; (2) the employer or individual took an adverse employment action against him; and (3) there was a causal connection between the two.  *See Estate of Olivai ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) (setting out standard for § 1981 retaliation claim); *Thomas v. Indep Twp.*, 463 F.3d 285, 196 (3d Cir. 2006) (setting out First Amendment retaliation standard).

#### 1. 42 U.S.C. § 1981 Retaliation Claim against Kenney

Defendants assert that plaintiff's § 1981 retaliation claim must fail, because plaintiff did not sufficiently allege that Kenney intentionally infringed his rights by terminating him.  Defs. Mem. Mot. Dismiss 8.  Individual liability under § 1981 requires proof that a defendant intentionally caused an infringement of rights.  *See Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 648–49 (E.D. Pa. 2012).  Defendants contend plaintiff did not plausibly allege that Kenney made the decision to terminate him.  Defs. Mem. Mot. Dismiss 8.

---

[2] Due to an error in the pagination of defendants' Second Motion to Dismiss, this Court instead cites to the pagination of the document as shown by ECF No. 7.

Plaintiff's main basis for alleging that Kenney made the decision to terminate him is an article posted online, which states, "Mayor Jim Kenney has decided to part ways with Chief Information Officer Charles Brennan," and quotes Kenney's spokesperson as saying Kenney's administration made the decision. Am. Compl. ¶ 74; Pl.'s Mem. Law Resp. 9. Furthermore, plaintiff alleges that Lopez and Slusser informed him Kenney was involved in the decision to terminate him. Am. Compl. ¶ 74. The Court concludes that these factual allegations are sufficient at the motion to dismiss stage to state a plausible claim that Kenney participated in the decision to terminate plaintiff and thus intentionally caused an infringement of plaintiff's rights.

Next, defendants argue that even if Kenney acquiesced in plaintiff's termination, plaintiff has not plausibly alleged Kenney was aware that the stated reason for plaintiff's termination was pretextual. Defs. Mem. Mot. Dismiss 8. The Court again disagrees.

In addition to the factual allegations noted above, plaintiff alleged Kenney was aware of plaintiff's discriminatory hiring and whistleblowing complaints that Lopez and Slusser reported to him, that plaintiff's termination came shortly after his complaints about the Comcast contract violations and his sensitivity training, and that plaintiff had not received any other discipline during his employment. Am. Compl. ¶¶ 36, 54, 73–77. Moreover, plaintiff avers defendants revealed to plaintiff they were opposed to his complaints by telling him it would be "good for [his] career" to racially diversify his staff and instructing him to not take any action that would upset Comcast. *Id.* ¶¶ 38, 68. Finally, plaintiff alleges that he was offered a severance package in exchange for waiving any discrimination or retaliation claims against City, notwithstanding the fact that it was not City's policy to do so. *Id.* ¶¶ 75–76; *see Staffieri v. Nw. Human Servs., Inc.*, No. 12-1612, 2013 WL 2245639, at *9 (E.D. Pa. May 22, 2013) (noting that offering severance when it was not company policy to do so on the condition plaintiff waive ADEA or

9

FMLA claims was a relevant factor in analyzing whether an employer's proffered reason for termination was pretextual).

The Court concludes that these factual allegations, taken as true at the motion to dismiss stage, are sufficient to state a claim that Kenney was aware that the stated reason for plaintiff's termination was pretextual. For these reasons, plaintiff's § 1981 claim against Kenney is allowed to proceed.

### 2. *First Amendment Retaliation Claim against Kenney under 42 U.S.C. § 1983*

Defendants further argue that plaintiff's First and Fourteenth Amendment retaliation claims against Kenney under § 1983 should be dismissed, because plaintiff has not sufficiently alleged Kenney's supervisory liability. Defs. Mem. Mot. Dismiss 9. The Court first addresses plaintiff's First Amendment retaliation claim. The Fourteenth Amendment retaliation claim is discussed in the section that follows.

Under § 1983, a supervisor can be held liable where he directed the discriminatory actions or had knowledge those actions would violate an individual's constitutional rights and acquiesced. *See Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). Defendants maintain plaintiff cannot prevail under a § 1983 supervisory liability theory, because plaintiff failed to allege that Kenney had actual knowledge his subordinates' actions would violate plaintiff's constitutional rights and acquiesced. Defs. Mem. Mot. Dismiss 9. Specifically, defendants note that plaintiff began objecting to City's diversity hiring initiative in 2016 and complained about the body camera contract with Axon in "early-to-mid-2017," yet he was not terminated until early 2018. *See id.*; Am. Compl. ¶¶ 37, 55. With this, defendants argue that Kenney had no reason to "second-guess the decisions of his deputies . . . as Plaintiff's protected activity was temporally remote from his termination." Defs. Mem. Mot. Dismiss 9. Plaintiff

10

responds that he was terminated "within less than two weeks" after his last objections. Pl.'s Mem. Law Resp. 16.

The Court cannot say, based on the present record, that there is no set of facts on which plaintiff could prevail in a § 1983 claim against defendant Kenney. Plaintiff's factual allegations, discussed above, include allegations that Kenney had knowledge of and was opposed to each of plaintiff's complaints. The Court thus concludes plaintiff has alleged sufficient facts, if true, to plead that Kenney was aware the termination would violate plaintiff's constitutional rights and acquiesced in that action. Plaintiff's First Amendment retaliation claim under § 1983 is thus allowed to proceed.

### B. Fourteenth Amendment Retaliation Claim against All Defendants under 42 U.S.C. § 1983

Second, defendants argue that plaintiff's Fourteenth Amendment retaliation claim against all defendants under § 1983 must be dismissed, because it is unsupported by case law. Defs. Mem. Mot. Dismiss 10. The Court agrees.

The Fourteenth Amendment Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Claims of discrimination under the Equal Protection Clause are actionable under 42 U.S.C. § 1983. *See, e.g.*, *Oliveira v. Twp. of Irvington*, 41 F. App'x 555, 559 (3d Cir. 2002). Plaintiff, however, does not assert a discrimination claim under the Equal Protection Clause. Instead, he contends only that he was retaliated against for expressing concerns of Equal Protection violations. *See* Am. Compl. ¶ 99. The Third Circuit has not recognized such a claim. *See Thomas v. Indep. Twp.*, 463 F.3d 285, 297–98 & n.6 (3d Cir. 2006) (noting "[a] pure or generic retaliation claim [] simply does not implicate the Equal Protection Clause" (quoting *Watkins v. Bowden*, 105 F.3d 1344, 1354–55 (11th Cir. 1997))); *Blakney v. City of Phila.*, No. 12-6300,

2013 WL 2411409, at *12–13 (E.D. Pa. June 4, 2013); *Marion v. City of Philadelphia*, 161 F. Supp. 2d 381, 386 n.2 (E.D. Pa. 2001) (noting retaliation claims brought under § 1983 and the Equal Protection Clause must fail).

Courts in this Circuit instead view claims of wrongful termination resulting from expressive activity, like this one, as claims of First Amendment retaliation. *See Wardlaw v. City of Philadelphia*, No. 09-3981, 2011 WL 1044936, at *6 & n.74 (E.D. Pa. Mar. 21, 2011) (dismissing Fourteenth Amendment retaliation claim for conflating it with a First Amendment claim); *Stubbs v. Nutter*, No. 10-3200, 2010 WL 3421015, at *3 (E.D. Pa. Aug. 30, 2010) (same); *O'Fee v. City of Phila.*, No. 09-2724, 2009 WL 3172759, at *4 (E.D. Pa. Oct. 2, 2009) (same). To the extent that plaintiff alleges he was retaliated against for complaining about Equal Protection Clause violations, these factual allegations support his First Amendment retaliation claim rather than a Fourteenth Amendment retaliation claim.

Plaintiff argues that Third Circuit case law supports a Fourteenth Amendment retaliation claim and cites to *Miller v. Mitchell*, 598 F.3d 139 (3d Cir. 2010), as evidence of this assertion. Pl.'s Mem. Law Resp. 16. However, *Miller* discusses a Fourteenth Amendment retaliation claim under substantive due process—not the Equal Protection Clause. *See* 598 F.3d at 147, 150, 155 (analyzing, at the preliminary injunction stage, a Fourteenth Amendment retaliation claim alleging a violation of parents' substantive due process right to direct their children's upbringing). Although Fourteenth Amendment substantive due process claims have been recognized in this Circuit, Equal Protection Clause retaliation claims have not. *See Thomas v. Independence Twp.*, 463 F.3d 285, 297 (3d. Cir. 2006) (dismissing an Equal Protection Clause retaliation claim but holding that a substantive due process claim was sufficiently pled).

Finally, plaintiff cites to a Second Circuit case, *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72 (2d Cir. 2015), in support of his claim. Am. Compl. ¶ 99. In *Vega*, the Second Circuit held for the first time that Fourteenth Amendment retaliation is actionable because retaliation is a form of intentional discrimination that violates the Equal Protection Clause. *See Vega*, 801 F.3d at 80–82. However, the Second Circuit's opinion in *Vega* is in the minority. Most other Circuits, including the Third Circuit, which have considered this question have held that there is no authority for a retaliation claim under the Equal Protection Clause of the Fourteenth Amendment. *See, e.g.*, *R.S.W.W., Inc. v. City of Keego Harbor*, 397 F.3d 427, 440 (6th Cir. 2005) ("[Plaintiff's] retaliation claim does not . . . arise under the Equal Protection Clause."); *Boyd v. Ill. State Police*, 384 F.3d 888, 898 (7th Cir. 2004); *Ratliff v. DeKalb County*, 62 F.3d 338, 340 (11th Cir. 1995) ("The right to be free from retaliation [for making complaints of discrimination] is clearly established as a first amendment right and as a statutory right under Title VII; but no clearly established right exists under the equal protection clause to be free from retaliation.").

Because the Court concludes that Fourteenth Amendment retaliation claims are unsupported by case law, that claim must be dismissed. The Court thus grants defendants' Motion to Dismiss plaintiff's Fourteenth Amendment retaliation claim against all defendants under § 1983 (Count V).

### C. Pennsylvania Whistleblower Law Retaliation Claims against Kenney, Slusser, and Lopez

Third, defendants claim plaintiff's Pennsylvania Whistleblower Law retaliation claims must be dismissed against each of the individual defendants—Kenney, Slusser, and Lopez— because, since the law was amended in 2014, individuals are no longer "employer[s]" under the text of the law. Defs. Mem. Mot. Dismiss 11. The Court disagrees.

13

The Pennsylvania Whistleblower Law provides that:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee . . . makes a good faith report or is about to report . . . to the employer . . . an instance of wrongdoing or waste by a public body.

43 Pa. Cons. Stat. § 1423(a).

An individual can be an employer under this law. The Pennsylvania Whistleblower Law defines an "employer" as "[a] public body or any of the following which receives money from a public body to perform work or provide services . . . : (1) An individual." 43 Pa. Cons. Stat. § 1422. Furthermore, case law in this District, including from this Court, has found individuals to be employers under the amended law. *See, e.g.*, *Boyer v. City of Philadelphia*, No. 13-6495, 2015 WL 9260007, at *8 (E.D. Pa. Dec. 17, 2015) (finding a former partner of a police officer an "employer"); *Bines v. Williams*, No. 17-4527, 2018 WL 4094957, at *4 (E.D. Pa. Aug. 27, 2018).

Plaintiff's Amended Complaint avers Kenney, Slusser, and Lopez are individuals "perform[ing] work" for a public body, the City of Philadelphia. Am. Compl. ¶¶ 8–10. Because individuals are included in the definition of "employer" under the Pennsylvania Whistleblower Law, Kenney, Slusser, and Lopez fall under the scope of this law, and defendants' argument must fail. Plaintiff's Pennsylvania Whistleblower Law claim is allowed to proceed.

## V. CONCLUSION

For the foregoing reasons, Defendants James F. Kenney, Jane Slusser, Christine Derenick-Lopez and the City of Philadelphia's Second Motion to Dismiss for Failure to State a Claim is granted with respect to plaintiff's Fourteenth Amendment retaliation claim against all defendants (Count V) and denied with respect to plaintiff's retaliation claims against Kenney under 42 U.S.C. § 1981 (Count I) and the First Amendment under § 1983 (Count III) and with

14

respect to plaintiff's Pennsylvania Whistleblower Law retaliation claims against Kenney, Slusser, and Lopez (Count IV). An appropriate order follows.