# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHARLES BRENNAN,<br>              Plaintiff,<br><br>v.<br><br>CITY OF PHILADELPHIA,<br>MAYOR JAMES F. KENNEY,<br>CHRISTINE DERENICK-LOPEZ, and<br>JANE SLUSSER,<br>              Defendants. | CIVIL ACTION<br><br><br><br>NO. 18-1417 |

DuBois, J.                                                                               July 25, 2019

## M E M O R A N D U M

### I. INTRODUCTION

Plaintiff Charles Brennan asserts that he was terminated from his position with the City of Philadelphia for voicing concerns over several perceived unlawful practices, including racially discriminatory hiring and violation of public contract award requirements. Plaintiff asserts retaliation claims against defendants the City of Philadelphia, Mayor James Kenney, and City officers Christine Derenick-Lopez and Jane Slusser pursuant to 42 U.S.C. § 1981; Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000(e) *et seq.*; the First Amendment pursuant to 42 U.S.C. § 1983; the Pennsylvania Whistleblower Law, 42 Pa. Cons. Stat. §§ 1421 *et seq.*; the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951 *et seq.*; and the Philadelphia Fair Practices Ordinance ("PFPO"), Phila. Code §§ 9-1101 *et seq.* Presently before the Court is Plaintiff's Motion to Compel Defendant Mayor James Kenney's Deposition. For the reasons that follow, the Motion is denied.

### II. BACKGROUND

The facts as set forth in this section are taken from the allegations in plaintiff's Second Amended Complaint.

In January 2016, plaintiff was hired as the City of Philadelphia's ("City") Chief Information Officer ("CIO"), responsible for overseeing technology matters for City. *See* Second Am. Compl. ("SAC") ¶¶ 18–19. As CIO, he reported to, and was supervised by, Christine Derenick-Lopez, City's Chief Administrative Officer. *Id.* ¶ 20. Over the next two years, plaintiff reported a series of concerns to defendants, including (1) racially discriminatory hiring, (2) the City's failure to follow public bidding process requirements, (3) the City's failure to act on a City contractor's missed deadlines, and (4) requests that plaintiff attend gender sensitivity training. Plaintiff was ultimately terminated in January 2018. *Id.* ¶ 21.

In November 2015, after Mayor James Kenney was elected, he began a hiring initiative to diversify City's workforce. *Id.* ¶¶ 17, 23. To implement this initiative, City's Chief Diversity Officer, Nolan Atkinson, met with plaintiff multiple times in 2016 and 2017 to address the racial composition of plaintiff's office. *Id.* ¶ 33. At these meetings, Atkinson informed plaintiff, *inter alia*, that his department was "too white" and directed plaintiff to diversify his hires to reflect the demographics of Philadelphia—namely, by hiring more African-American and Hispanic individuals. *Id.* ¶¶ 33–34. Believing that these hiring directives were unlawfully discriminatory, plaintiff complained to Derenick-Lopez, who was required by her duties as Chief Administrative Officer to communicate concerns of discrimination to defendants Kenney and his Chief of Staff, Jane Slusser. *Id.* ¶¶ 35–36. These complaints were not addressed by any party. *Id.* ¶ 37. Instead, Derenick-Lopez "suggested at times" that it would be "good for [his] career" if plaintiff hired more minorities. *Id.* ¶ 38. On occasion, Derenick-Lopez told plaintiff it was a shame the best candidate was white, because they needed to hire an African-American for the position. *Id.* ¶ 42. Plaintiff continued to object to these hiring practices in the months leading up to his termination in January 2018. *Id.* ¶ 44.

Second, plaintiff alleges retaliation for complaints he made about a contract that City entered with Axon Enterprises, Inc., in 2017 to purchase 4,000 body cameras for City patrol officers. *Id.* ¶¶ 47–48. Plaintiff had several concerns about the contract with Axon, including the substantial cost, violation of public bidding process requirements by City, City's failure to conduct due diligence and a cost-benefit analysis, and City's plan to bypass plaintiff's approval. *See id.* ¶ 50. Accordingly, plaintiff objected to the agreement, and was initially able to prevent City from proceeding with it. *See id.* In addition, plaintiff reported his concerns to Ellen Kaplan, City's Chief Integrity Officer, who communicated them to Kenney and Slusser. *Id.* ¶ 55. Plaintiff was met with animosity from City operations management for his complaint and was "warned" for his objection to the Axon contract.[1] *Id.* ¶¶ 53, 57. Thereafter, City proceeded with the $12 million contract with Axon, despite plaintiff's objections. *Id.* ¶ 53.

Third, plaintiff alleges retaliation for his complaints about Comcast's failure to meet certain deadlines required by its cable-franchise agreement with City. Comcast had a contract with City that required it to perform work, including repairing dangling wires and providing proper grounding, within certain deadlines. *Id.* ¶¶ 60–61. According to the contract, if Comcast missed any of its deadlines, City was entitled to compensation. *Id.* ¶ 61. Comcast claimed it was compliant with all deadlines as of December 31, 2017. *Id.* ¶ 62. However, plaintiff believed Comcast had not met its deadlines and that it sought to avoid penalties by designating more than 250,000 properties that it failed to service as "denial of access" properties, meaning Comcast was unable to access the properties for remediation. *Id.* Worried the City would lose thousands of dollars by ignoring these violations, plaintiff raised this issue with Derenick-Lopez at one of their weekly meetings. *Id.* ¶¶ 64–65. Derenick-Lopez directed plaintiff to "take it easy" on

---

[1] It is unclear, from plaintiff's Second Amended Complaint, who issued this warning or what was said.

Comcast, to not upset Comcast, and to go along with its "denial of access" designations. *Id.* ¶ 64. Derenick-Lopez later informed plaintiff that his complaint "caused a great deal of concern" in the Mayor's office and that Kenney and Slusser did not want plaintiff to take any action that would upset Comcast. *Id.* ¶¶ 67–68.

Finally, plaintiff alleges retaliation for his complaints about being asked to attend sensitivity training. In fall 2017, Derenick-Lopez told plaintiff he was insensitive to gender in the workplace, citing a few of plaintiff's comments as examples, and recommended that plaintiff undergo sensitivity training. *Id.* ¶ 70. Plaintiff believed Derenick-Lopez's request was unfair, retaliation for his objections to City's discriminatory racial hiring, and an attempt to "set the foundation" for his eventual termination. *See id.* ¶ 70. Plaintiff complained to the Deputy Chief Administration Officer of the Human Resources Department, Jackie Linton, that the City was discriminating by only asking white male management to attend sensitivity training. *Id.* ¶ 72. In December 2017, Derenick-Lopez again suggested that plaintiff attend sensitivity training, and plaintiff again expressed his belief that the request was discriminatory, retaliatory, and unwarranted. *Id.* ¶ 73.

On or about January 12, 2018, plaintiff was called into a meeting with Derenick-Lopez and Slusser and was terminated. *Id.* ¶ 74. Derenick-Lopez and Slusser told plaintiff that Kenney acquiesced in plaintiff's termination. *Id.* Plaintiff had not previously received any formal discipline. *Id.* ¶ 75. Plaintiff was offered a severance package in exchange for waiving all discrimination and retaliation claims against City, but he declined. *Id.* Employees of City who are terminated for cause or misconduct are not entitled to severance compensation under City policies. *Id.* ¶ 76. Thereafter, Kenney's spokesperson communicated to the press that Kenney let plaintiff go to seek a "change in leadership." *Id.* ¶ 74.

Plaintiff filed the Complaint on April 4, 2018 (Document No. 1), asserting claims against the City of Philadelphia, Kenney, Slusser, and Derenick-Lopez.  Plaintiff filed the First Amended Complaint on June 18, 2018 (Document No. 5).  On March 29, 2019, plaintiff filed the Second Amended Complaint (Document No. 21), asserting retaliation claims against all defendants under § 1981 (Count I), the First Amendment through § 1983 (Count III), the Pennsylvania Whistleblower Law (Count IV), the PHRA (Count V), and the PFPO (Count VI), as well as a Title VII retaliation claim against the City of Philadelphia (Count II).

On May 1, 2019, plaintiff filed a motion to compel the deposition of Kenney (Document No. 23).  On May 7, 2019, defendants responded to the motion (Document No. 24), and on May 24, 2019, plaintiff filed a reply (Document No. 26).  The motion is thus ripe for decision.

### III.  APPLICABLE LAW

"A party may, by oral questions, depose any person, including a party, without leave of court," unless the party has not stipulated to the deposition.  *See* Fed. R. Civ. P. 30(a).  "High ranking government officials are generally entitled to limited immunity from being deposed concerning matters about which they have no unique personal knowledge." *Hankins v. City of Phila.*, No. 95-1449, 1996 WL 524334, at *1 (E.D. Pa. Sept. 12, 1996).  "'[T]his rule is based on the notion that high ranking government officials have greater duties and time constraints than other witnesses' and that, 'without appropriate limitations, such officials will spend an inordinate amount of time tending to pending litigation.'" *Buono v. City of Newark*, 249 F.R.D. 469, 470 n.2 (D.N.J. 2008) (quoting *Bogan v. City of Boston*, 489 F.3d 417, 423 (1st Cir. 2007)).  To protect these interests, the party requesting the deposition of a high ranking government official must show that the proposed deposition (1) "is likely to lead to the discovery of admissible evidence," (2) "is essential to that party's case," and (3) "that this evidence is not available

5

through any alternative source or less burdensome means." *Hankins*, 1996 WL 524334, at *1.

## IV. DISCUSSION

Plaintiff seeks to compel Mayor Kenney's deposition. "[D]istrict courts have routinely found that a mayor is sufficiently high ranking to trigger the limited immunity from a deposition about matters on which they lack unique personal knowledge." *Tomaszewski v. City of Phila.*, No. 17-4675, 2018 WL 6590826, at *3 (E.D. Pa. Dec. 14, 2018). Thus, Mayor Kenney is a high-ranking government official. To depose Kenney, plaintiff must show that (1) Kenney's deposition is "likely to lead to the discovery of admissible evidence," (2) Kenney's deposition is "essential to that party's case," and (3) that the evidence Kenney's deposition would elicit "is not available through any alternative source or less burdensome means." *See Hankins*, 1996 WL 524334, at *1. The Court will address each requirement in turn.

### A. <u>Likely to Lead to the Discovery of Admissible Evidence</u>

First, plaintiff must show that Kenney's deposition is "likely to lead to the discovery of admissible evidence." *Id.* This element "requires something greater than the normal Rule 26 relevancy standard." *Robinson v. City of Phila.*, No. 04-3948, 2006 WL 1147250, at *2 (E.D. Pa. Apr. 26, 2006). In order to depose a mayor, the party seeking the deposition must make an actual showing that the mayor "possesses personal knowledge relevant to the litigation." *Id.*

Plaintiff contends that Kenney "possesses personal knowledge relevant to the litigation" because he participated in conversations about terminating plaintiff and agreed to that action, as shown by deposition testimony of Derenick-Lopez and Slusser. *See* Pl. Mot. Compel 12. For example, Slusser testified that she conveyed concerns about plaintiff to Kenney weeks before plaintiff was terminated. *See* Pl. Mot. Compel, Ex. E, Slusser Dep. 158:7–22. Both Derenick-Lopez and Slusser testified that they made the decision to terminate plaintiff, then met with

6

Kenney to give him a "head's-up" about their decision. *See* Pl. Mot. Compel, Ex. D, Derenick-Lopez Dep. 81:2–83:12; Slusser Dep. 156:24–157:24. Both Derenick-Lopez and Slusser also testified that Kenney raised no objections and approved that decision. *See* Derenick-Lopez Dep. 214:23–215:18; Slusser Dep. 157:8, 158:4–6. Furthermore, former Deputy Chief Administration Officer of the Human Resources Department, Jackie Linton, stated in her certification that Derenick-Lopez told her Kenney wanted plaintiff to be let go. *See* Pl. Mot. Compel, Ex. C, Linton Cert., at ¶ 19.

In addition, plaintiff contends that Kenney has "personal knowledge" relevant to plaintiff's whistleblowing claims regarding the Comcast contract. *See* Pl. Reply 4–5. Plaintiff testified that Derenick-Lopez told him "the Mayor's office want[ed] [him] to . . . take it easy on Comcast," denied by Derenick-Lopez. *See* Pl. Dep. 157:1–6; Defs. Resp. Ex. C, Derenick-Lopez Dep. 173:3–5.

Defendants argue that plaintiff has not shown that Kenney has relevant personal knowledge. *See* Defs. Resp. 6. It is defendants' position that although Kenney approved Derenick-Lopez and Slusser's decision to terminate plaintiff, his approval was merely perfunctory and is insufficient to show he has personal knowledge about the reasons for plaintiff's termination. *Id.* at 6–7. Defendants compare the case to *Hankins*, in which a court in this District concluded that a mayor's *pro forma* approval of "changes to job classifications approved and submitted by the Civil Service Commission" was insufficient to demonstrate that he had personal knowledge of the reasons for the changes. *See id.* at 6; *Hankins*, 1996 WL 524334, at *2. Defendants claim that similarly, in this case, Kenney's *pro forma* approval of plaintiff's termination is insufficient to show he has personal knowledge about the reasons for plaintiff's termination. *See* Defs. Resp. 6–7.

The Court concludes that plaintiff has adequately shown that deposing Kenney is "likely to lead to the discovery of admissible evidence." *See Hankins*, 1996 WL 524334, at *1. The circumstances of this case differ from other cases in which courts have concluded that the high ranking government official did not "possess[] personal knowledge relevant to the litigation." *See Robinson*, 2006 WL 1147250, at *2. For example, in *Tomaszewski*, this Court determined that Kenney did not have personal knowledge about a decision not to promote the plaintiff because the evidence established that plaintiff's application was rejected early in the selection process by a separate committee and there was no evidence that Kenney had seen plaintiff's application. *See Tomaszewski*, 2018 WL 6590826, at *4. In this case, Kenney was more significantly involved—Derenick-Lopez and Slusser testified that they met with Kenney to tell him why they wanted to terminate plaintiff before taking action, and Slusser said that she informed Kenney of concerns about plaintiff weeks before his termination. For these reasons, this case also differs from *Hankins*, in which the court determined that a mayor's approval of proposed changes to job classifications did "not demonstrate that he has personal knowledge of the particular reasons why such changes were proposed or why staffing decisions of various agencies were made." *See Hankins*, 1996 WL 524334, at *2. Moreover, Kenney possesses personal knowledge about any directives he gave to his staff regarding the Comcast contract or plaintiff's complaints about it. The Court thus determines Kenney may possess personal knowledge relevant to the litigation.

### B. Essential to Plaintiff's Case

Second, plaintiff must show that Kenney's deposition is essential to plaintiff's case. *See Hankins*, 1996 WL 524334, at *1. Kenney is a named defendant in this case. Plaintiff has asserted five counts of retaliation against him pursuant to § 1981, the First Amendment through

§ 1983, the Pennsylvania Whistleblower Law, the PHRA, and the PFPO.

Plaintiff contends Kenney's testimony about the extent of his involvement and participation in the decision to terminate him is essential to proving Kenney's individual liability under § 1981, the PHRA, and the PFPO. *See* Pl. Mot. Compel 13. For example, under § 1981, plaintiff must show that Kenney "intentionally cause[d] an infringement of rights." *Miller v. Thomas Jefferson Univ. Hosp.*, 908 F. Supp. 2d 639, 648 (E.D. Pa. 2012) (quoting *Al-Khazraji v. Saint Francis Coll.*, 784 F.2d 505, 518 (3d Cir. 1986), *aff'd*, 481 U.S. 604 (1987)). Plaintiff contends that he will be unable to make this showing without testimony from Kenney. *See* Pl. Reply 6. Moreover, plaintiff argues that Kenney's testimony with respect to the Comcast contract is essential to his whistleblower claims. *See id.* at 7.

Defendants admit that plaintiff "may not be able to succeed on [his] claims against the Mayor without an admission by the Mayor that he was aware of Plaintiff's complaints and was personally involved in the decision to terminate Plaintiff." *See* Defs. Resp. 8. On this issue, defendants argue that there is "no reason to believe" that Kenney would make statements to that effect if deposed. *Id.* Furthermore, defendants argue that Kenney's deposition is immaterial to plaintiff's *overall* success on his claims, because plaintiff can continue to pursue these claims against the remaining individual defendants without prevailing against Kenney. *See id.* Finally, defendants argue that Kenney's deposition would "largely duplicate evidence provided by other witnesses" and is therefore not essential to Plaintiff's overall case. *Id.*

The Court determines that plaintiff has shown Kenney's testimony about the Comcast contract and plaintiff's termination is essential to proving his claims against Kenney. Indeed, defendants admit plaintiff is unlikely to succeed on his claims against Kenney without testimony from Kenney himself. Furthermore, the Court rejects defendants' argument that the fact that

plaintiff can pursue his claims against other individual defendants is reason to conclude that Kenney's testimony is inessential. Finally, Kenney's testimony would not be duplicative, because discovery and depositions of other city officials has not produced evidence of Kenney's involvement in, for example, plaintiff's termination and the Comcast contract.

### C. Available Through Alternative Sources and Less Burdensome Means

Finally, plaintiff must show that the evidence he seeks through Mayor Kenney's deposition is not available through any alternative source or less burdensome means. *See Hankins,* 1996 WL 524334, at *1.

Plaintiff contends that Kenney's testimony cannot be obtained in a less burdensome manner, because he will "only be able to fully explore the full extent" of Kenney's conversations with Derenick-Lopez and Slusser regarding the Comcast contract and plaintiff's termination through a deposition. Pl. Reply 7. He maintains that he is willing to limit Kenney's deposition to one hour and to conduct it "on any date and at any time and location convenient" for Kenney. *See* Pl. Mot. Compel 3.

Defendants argue that if plaintiff "needs a final resolution as to exactly what the Mayor remembers his involvement to be," then less restrictive means are available, such as interrogatories or requests for admission. Defs. Resp. 9.

The Court agrees with defendants on this issue. Plaintiff has not shown that a limited deposition by written questions pursuant to Federal Rule of Civil Procedure 31 would not be effective in obtaining the information that plaintiff seeks. If, after plaintiff has conducted such a written deposition, plaintiff concludes that an oral deposition of Kenney is still necessary, plaintiff may file a second motion to compel.

### V. CONCLUSION

10

For the foregoing reasons, Plaintiff's Motion to Compel Defendant Mayor James Kenney's Deposition is denied. This order is without prejudice to plaintiff's right to conduct a limited deposition of Kenney by written questions, pursuant to Federal Rule of Civil Procedure 31. If plaintiff concludes, after a limited deposition by written questions, that a limited oral deposition is necessary, plaintiff may file a second motion to compel Kenney's deposition. An appropriate Order follows.