## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

CHARLES BRENNAN        :

     Plaintiff,         :

       v.             :

CITY OF PHILADELPHIA     :
     and           :
MAYOR JAMES F. KENNEY    :
     and           :
JANE SLUSSER            :
     and           :
CHRISTINE DERENICK-LOPEZ   :
                        :
     Defendants.       :

CIVIL ACTION

No.: 18-1417

## PLAINTIFF'S BRIEF IN OPPOSITION TO
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES……………………………………...………………......i

I.    INTRODUCTION ………………………………………………………………..1

II.   LEGAL ANALYSIS……… . ……………………..…………………..…………....4

A) STANDARD OF REVIEW……………………………………………….4
B) LEGAL ARGUMENT……….……………………………………………..6

1.   Mr. Brennan has persuasively established his retaliation claims
(under Title VII, 42 U.S.C. § 1981 via § 1983, The PHRA and the
PFPO)…………………………………………………………………..6

a. Mr. Brennan engaged in protected activity. …………………….9
b. Mr. Brennan suffered an adverse employment action …………12
c. There is a causal link between Mr. Brennan's protected activities
and his termination……………………………………………….12

1. The time between Mr. Brennan's final complaints of
discrimination (in December 2017) and his termination (on
January 12, 2018) is usually suggestive of retaliation and,
in and of itself, establishes the causal link element of his
retaliation claim ………………………………………….13
2. Mr. Brennan was subjected to a pattern of ongoing
antagonism and hostility after his complaints of
discrimination ……………………………………………15

d. Defendants' proffered reasons for termination are pretextual …17
e. Mr. Brennan has established an underlying § 1981 violation….26

2. Mr. Brennan has also persuasively established his First Amendment
Retaliation Claim ……………………………………………………..28

a. Mr. Brennan spoke as a citizen when he made repeated
complaints about matters of public concern. …………………….30
b. Defendants' retaliatory action was sufficient to deter a person of
ordinary firmness from exercising his or her rights……………..31
c. Mr. Brennan's complaints are causally related to this termination31

1. Causal Link – Race Discrimination Complaints…………32
2. Causal Link – Waste/Fraud Complaints ………………..33
3. Causal Link – Contractual/Comcast Complaints………..33

3. Mr. Brennan has also established his Pennsylvania Whistleblower claim34

a. Mr. Brennan made good faith reports of waste and wrongdoing36
b. Mr. Brennan suffered an adverse employment action ...............38
c. There is a causal link between Mr. Brennan's complaints and his termination .....................................................................................38

4. Defendants Kenny, Derenick-Lopez and Slusser are individual liable for Mr. Brennan's unlawful termination.........................................................39

III.   CONCLUSION ..........................................................................................42

## TABLE OF AUTHORITIES

**Cases**

*Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 530, 2014 U.S. Dist. LEXIS 1313, *24-25, 121 Fair Empl. Prac. Cas. (BNA) 533, 2014 WL 47773 (E.D. Pa. 2014) ........................ 12

*Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 288 (3d Cir.2001) ......... 10, 19

*Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970) .......... 5

*Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016)) ............................... 40

*Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 553 (E.D.Pa. 2013) ..................................... 28

*Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) ................................ 7, 9

*Amos v. McNairy County*, 2014 U.S. Dist. LEXIS 9935 (W.D. Tenn. 2014) ............................ 16

*Bailets v. Pa. Tpk. Comm'n*, 633 Pa. 1, 15, 123 A.3d 300, 308-309, 2015 Pa. LEXIS 1995, *22, 40 I.E.R. Cas. (BNA) 971 (Pa. Super 2015) ................................................................ 34, 37, 40

*Baker v. Becton, Dickinson & Co.*, 532 Fed. Appx. 601 (6th Cir. 2013) ..................................... 16

*Baker-Bey v. Pennsylvania Dept. of Corrections*, WL 2856397 (E.D. Pa. 2008) ....................... 10

*Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995) ............................................. 10

*Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) .................................... 22

*Bennett v. Riceland Foods*, Inc., 721 F.3d 546 (8th Cir. 2013) ................................................... 16

*Bishop v. Ohio Dep't of Rehab. & Corr.*, 529 Fed. Appx. 685, 695 (6th Cir. 2013) ................... 16

*Brennan v. City of Philadelphia*, 388 F. Supp. 3d 516, 520, 2019 U.S. Dist. LEXIS 125590, *8 (E.D. Pa. 2019) ............................................................................................................................ 42

*Brennan v. Norton*, 350 F.3d 399, 412 (3rd Cir. 2003) ......................................................... 29, 31

*Brewer v. Quaker State Oil Refining Corp.*, 72 F.3d 326, 332 (3d Cir.1995) ............................. 20

*Brown v. Pa., Dep't of Corr.*, 2019 U.S. Dist. LEXIS 142132, *22-23 (MD Pa 2019) .......... 21, 32

*Brunelle v. City of Scranton*, 2019 U.S. Dist. LEXIS 62957, 2019 WL 1584601, at *7 (M.D. Pa. 2019) ............................................................................................................................................ 20

*Burlington v. News Corp.*, 759 F.Supp.2d 580, 600 (E.D.Pa.2010) .............................................. 6

*Burton v. Pennsylvania Board of Probation and Parole*, No. 02-2573, 2002 WL 1332808, at * 5 (E.D. Pa. 2002) ............................................................................................................................ 10

*Butler v. BTC Foods, Inc.*, 2014 U.S. Dist. LEXIS 11286, 20, 29 Am. Disabilities Cas. (BNA) 705, 2014 WL 336649 (E.D. Pa. 2014) ...................................................................................... 14

*Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001) ............................................................. 39

*Castleberry v. STI Grp.*, 863 F.3d 259, 267, 2017 U.S. App. LEXIS 12611, *13, 101 Empl. Prac. Dec. (CCH) P45,840, 2017 WL 2990160 (3d Cir. 2017) ............................................................ 27

*CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008) 6

*Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 899 (3d Cir. 1987) .............................................. 5

*Claybourne v. HM Ins. Group*, 2015 U.S. Dist. LEXIS 157910, *17-19 (W.D. Pa 2015) .......... 27

*Crawford v. George & Lynch, Inc.*, 2013 U.S. Dist. LEXIS 174892 (D. Del. 2013) ................... 16

*Connearney v. Main Line Hosps., Inc.*, No. CV 15-02730, 2015 WL 9302912, at *8 (E.D. Pa. Dec. 22, 2015) .............................................................................................................................. 40

*Connick v. Myers*, 461 U.S. 138 (1983)...................................................................... 29

*Damiano v. Scranton Sch. Dist.,* 135 F. Supp. 3d 255, 267 (M.D. Pa. 2015) ............... 28

*Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015) ................................ 27

*Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 543, 2016 U.S. Dist. LEXIS 146606, *13, 100 Empl. Prac. Dec. (CCH) P45,668, 2016 WL 6190560 (E.D. Pa 2016) ..................... 7

*Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996) ............................................... 6

*Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 370 (3d Cir. 2008) .............. 6, 18

*Dohner v. Clearfield County*, 2009 U.S. Dist. LEXIS 77121, 61-62, 2009 WL 2762548 (W.D. Pa. 2009) ................................................................................................ 13

*Dougherty v. Sch. Dist.*, 772 F.3d 979, 988 (3rd Cir. 2014) ....................................... 29

*Drwal v. Borough of West View, Pa.*, 617 F. Supp. 2d 397, 422 (W.D. Pa. 2009) ...... 22

*EEOC v. Grane Healthcare Co.,* 2014 U.S. Dist. LEXIS 28477, 74, 29 Am. Disabilities Cas. (BNA) 655 (W.D. Pa. 2014) ...................................................................... 18

*EEOC v. L.B. Foster Co.*, 123 F.3d 746, 753–54 (3d Cir.1997), cert. denied, 522 U.S. 1147, 118 S.Ct. 1163, 140 L.Ed.2d 174 (1998) ............................................ 19

*Ellis v. Budget Maint., Inc.,* 25 F. Supp. 3d 749 (E.D. Pa. 2014) ............................... 27

*Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998) ......... 21

*Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010) ....... 27

*Exter v. Wilkes-Barre Hosp. Co., LLC*, 2014 WL 4384363, *4 (M.D. Pa. 2010) .......... 6, 15

*Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) ......... 12, 13, 15, 19

*Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005)........................................................... 13

*Fitzgerald v. Martin*, 2017 U.S. Dist. LEXIS 122228, *16-17, 2017 WL 3310676 (E.D. Pa. 2017) ................................................................................................... 8

*Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)....................................... 6

*Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994) ..................................... 18, 19, 20

*Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006) .......................................................... 28

*Gelover v. Lockheed Martin*, 971 F.Supp. 180, 181 (E.D.Pa.1997) ............................... 5

*Golaschevsky v. Department of Envtl. Protection*, 554 Pa. 157, 163, 720 A.2d 757, 759 (1998) 38

*Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) ................................................. 28

*Gray v. Hafer*, 168 Pa. Commw. 613, 618-19, 651 A.2d 221, 224 (1994)................... 36

*Griffiths v. CIGNA Corp.*, 988 F.2d 457, 468, 1993 U.S. App. LEXIS 4870, 63 Fair Empl. Prac. Cas. (BNA) 1205, 61 Empl. Prac. Dec. (CCH) P42,108 (3d Cir. Pa. 1993) .............. 9

*Hankins v. City of Phila.*, No. 95-1449, 1996 U.S. Dist. LEXIS 13314, 1996 WL 524334, at *1-2 (E.D. Pa. 1996).................................................................................... 41

*Hisey v. QualTek USA, LLC*, 2019 U.S. Dist. LEXIS 141260, *40, 2019 WL 3936555 (E.D. Pa 2019) ..................................................................................... 6, 13, 39

*Horton v. Amerway, Inc.,* 2013 U.S. Dist. LEXIS 101105, 33, 119 Fair Empl. Prac. Cas. (BNA) 633, 2013 WL 3802459 (W.D. Pa. 2013) ............................................... 19

*Jackson v. Bob Evans-Columbus*, No. 2:04cv559, 2006 WL 3814099, at *7 (W.D. Pa. 2006)... 21

*Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989) ............................................... 18

*Johnson v. Keystone Quality Transp. Co.,* 2018 U.S. Dist. LEXIS 12028 at \*4 n.3 (E.D. Pa. 2018) ........................................................................................................................ 40

*Johnson v. Penske Truck Leasing Co.,* 949 F. Supp. 1153, 1172, 1996 U.S. Dist. LEXIS 19383 (D.N.J. 1996)........................................................................................................... 18

*Johnson v. Res. for Human Dev., Inc.,* 843 F. Supp. 974, 978 (E.D. Pa. 1994) ......................... 39

*Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638-39 (3d Cir. 1993) ........................ 18, 21

*Justiano v. G4S Solutions, Inc,* 291 F.R.D. 80, 82 (D. NJ 2013)................................................. 21

*Kachmar v. Sungard Data Systems, Inc.,* 109 F.3d 173, 177 (3d Cir. 1997)............................... 12

*Karl v. City of Mountlake Terrace,* 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) ............ 22

*Kautz v. Met-Pro Corp.,* 412 F.3d 463, 468, 2005 U.S. App. LEXIS 11559, 104 Fair Empl. Prac. Cas. (BNA) 381, 86 Empl. Prac. Dec. (CCH) P41,979 (3d Cir. Pa. 2005) ...................... 19, 20

*Kisner v. DeFazio,* 2009 U.S. Dist. LEXIS 117160, 2009 WL 4891837, at \*7 (W.D. Pa. 2009) 21

*Kline v. Valentic,* 283 Fed. Appx. 913, 916, (3rd Cir. 2008)...................................................... 29

*Krouse v. American Sterilizer Co.,* 126 F.3d 494, 500 (3d Cir. 1997) .......................................... 7

*Lane v. Franks,* 189 L.Ed.2d 312 (2014) .................................................................................. 29

*Larry v. Powerski,* 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015)............................................... 29

*Lauren W. ex rel Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007) ........................ 28, 32

*LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n,* 503 F.3d 217, 232 (3d Cir. 2007) ................ 13, 14

*Malone v. Economy Borough Municipal Authority,* 669 F.Supp.2d 582, 603 (W.D. Pa. 2009) .. 32

*Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 302 (3d Cir. 2007), as amended (Aug. 28, 2007)13, 15

*Marrero v. Camden Cty. Bd. of Social Services,* 164 F.Supp.2d 455, 469 (D.N.J. 2001)............ 32

*Marzano v. Computer Science Corp.,* 91 F.3d 497, 509-10 (3d Cir. 1996)................................... 5

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587-588........................ 5

*McAndrew v. Bucks County Bd. Of Comm'rs,* 183 F.Supp.3d 713, 731 (E.D. Pa. 2016)............. 28

*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973) ...... 6

*McGreevy v. Stroup,* 413 F.3d 359, 367 (3d Cir. 2005) .............................................................. 8

*McKee v. Hart,* 436 F.3d 165, 170, (3rd Cir. 2006)................................................................... 31

*McMinn v. Pa. Rural Water Auth. Ass'n,* 2005 Pa. Dist. & Cnty. Dec. LEXIS 103, 74 Pa. D. & C.4th 194 (Pa. County Ct. 2005)........................................................................... 34, 36, 39

*Mondaine v. Am. Drug Stores, Inc.,* 408 F. Supp. 2d 1169, 2006 U.S. Dist. LEXIS 871, 11 Wage & Hour Cas. 2d (BNA) 238, 17 Am. Disabilities Cas. (BNA) 1030 (D. Kan. 2006)............... 10

*Monell v. Department of Social Services,* 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)6, ................................................................................................................... 7

*Monteiro v. City of Elizabeth,* 436 F.3d 397, 405 (3d Cir. 2006)................................................ 20

*Moore v. City of Philadelphia,* 461 F.3d 331, 340-41 (3d Cir. 2006) ........................................... 7

*Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992) ............................................... 12

*Mulholland v. Gov't County of Berks,* 706 F.3d 227, 237 (3d Cir. 2013)...................................... 8

*Neiderlander v. Am. Video Glass Co.,* 80 Fed. Appx. 256, 261 (3d Cir. 2003) .......................... 10

*Nelson v. Upsala Coll.,* 51 F.3d 383, 386 (3d Cir. 1995) ............................................................ 7

iii

*O'Rourke v. Commonwealth, Department of Corrections*, 566 Pa. 161, 175, 778 A.2d 1194, 1202 (2001) ......................................................................................................................... 35, 36, 38

*Pierce v. City of Phila.*, 2018 U.S. Dist. LEXIS 217216, *44-45, 2018 WL 6832093 (E.D. Pa. 2018, Pappert, J.) ............................................................................... 7, 8, 15,16, 26, 27

*Radue v. Kimberly–Clark Corp.*, 219 F.3d 612, 617–18 (7th Cir.2000) ..................................... 21

*Rankin v. City of Philadelphia*, 963 F.Supp. 463 (E.D.Pa.1997).............................................. 40

*Red v. Potter*, 211 F. App'x 82, 84 (3d Cir.2006)..................................................................... 21

*Reilly v. City of Atlantic City*, 532 F.3d 216, 233 (3d Cir. 2008) ............................................. 20

*Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)........................................ 14

*Robinson v. S.E. Pa. Transp. Auth.*, 982 F.2d 892, 895 (3d Cir. 1993)................................ 13, 14

*Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir. 1988)..................................................... 30

*Rodgers v. Pennsylvania Dep't of Corrections*, 659 A.2d 63, 64, 1995 Pa. Commw. LEXIS 229 (Pa. Cmwlth 1995) ............................................................................................... 36, 39

*Rumanek v. Indep. Sch. Mgmt.*, 2014 U.S. Dist. LEXIS 3091 (D. Del. 2014) ....................... 19, 20

*Sabrina Sims v. District of Columbia*, U.S. Dist. LEXIS 15181, at * 23 (D. D.C. 2014) ............ 16

*Schurr v. Resorts Int'l Hotel Inc.*, 196 F.3d 486, 499 (3d Cir. 1999) .......................................... 6

*Scott v. Genesis Healthcare, Inc.*, 2016 U.S. Dist. LEXIS 111262, *61 (E.D. Pa. 2016)............. 7

*Sea v. Seif*, 831 A.2d 1288, 1291, 2003 Pa. Commw. LEXIS 681, 5-6 (Pa. Cmwlth. Ct. 2003) . 36

*Sec. & Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F. Supp. 3d 454, 467, 2015 U.S. Dist. LEXIS 151554, *28-29, 98 Fed. R. Evid. Serv. (Callaghan) 1174 (E.D. Pa. 2015).............................. 8

*Sempier v. Johnson & Higgins*, 45 F.3d 724, 732-33 (3d Cir.1995) ...................................... 5, 20

*Senador v. Zober Indus.*,2009 U.S. Dist. LEXIS 36059,2009 WL 1152168(E.D. Pa. 2009)......... 6

*Seybert v. International Group*, Inc., WL 722291 (E.D. Pa. 2009).............................................. 11

*Sgro v. Bloomberg L.P.*, 331 Fed.Appx. 932, (3d Cir. 2009) ................................................... 10

*Shellenberger v. Summit Bancorp, Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) ................................ 14

*Sheridan v. E.I. DuPont de Nemours and Co.*, 100 F.3d 1061 (3d Cir.1996) (en banc), *cert. denied*, 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997) ........................................ 18

*Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995) ....................... 5

*Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644-45 (3d Cir. 1998)............... 18

*Sorba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 205 (3d Cir. 1987) ...................................... 19

*Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, *12, 118 Fair Empl. Prac. Cas. (BNA) 833, 2013 WL 2245639 (E.D. Pa. 2013) ............................................. 21, 22

*Stewart v. Rutgers, State Univ.*, 120 F.3d 426, 431 (3d Cir. 1997) ............................................. 5

*Stroud v. Susquehanna Cty.*, 2018 U.S. Dist. LEXIS 131672, *10, 2018 WL 3727388 (M.D. Pa. 2018) ................................................................................................................... 6, 40

*Suppan*, 203 F.3d at 236 ...................................................................................................... 32

*Tee Boyer v. City of Philadelphia*, No. CV 13-6495, 2015 WL 9260007, at *8 (E.D. Pa. 2015) 40

*Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006) ............................................ 28

*Tomasso v. Boeing Co.*, 6445 F.3d 702, 707 (3rd Cir. 2006) ................................................... 19

iv

*Treaster v. Conestoga Wood Specialties, Corp.*, 2010 U.S. Dist. LEXIS 63257, 98, 2010 WL 2606479 (M.D. Pa. 2010) ............................................................................................ 7

*Trujillo-Cummings v. Public Serv. Co.*, 173 F.3d 864 (10th Cir. 1999)........................................ 12

*Truskoski v. ESPN, Inc.*, 823 F. Supp. 1007, 1012 (D.Conn. 1993) ............................................ 10

*Tyler v. SEPTA,* No. Civ. A. 99-4825, 2002 WL 31965896, at *3 (E.D.Pa. 2002) (alterations in original), *aff'd,* 85 F. App'x 875 (3d Cir.2003) ........................................................ 21

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)................................................................ 5

*Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir.1986)........................................ 19

*Walden v. St. Gobain Corp.*, 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004)...................................... 5

*Walker v. City of New York*, 2002 WL 31051534, at *6 (E.D.N.Y. 2002) .................................. 30

*Wayne v. Glen Mills Schools*, 2010 WL 2044489 (E.D.Pa. 2010) .............................................. 21

*Webb v. Merck & Co., Inc.*, 450 F. Supp. 2d 582, 600, 2006 U.S. Dist. LEXIS 64860, *46-48 (E.D. Pa. 2006) ............................................................................................................ 9

*Wilkie v. Geisinger System Services*, 2014 WL 4672489, *5 (M.D. Pa. 2014) ............................ 6

*Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) ........................ 22

*Williams v. Potter,* Civil Action No. 07-02, 2008 WL 282349, at *3 (W.D.Pa. 2008) ................ 21

*Wren v. City of Luzerne*, 2015 WL 3831183, *5 (M.D. Pa. 2015) .............................................. 21

*Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047, 116 P.3d 1123, 1134, 32 Cal. Rptr. 3d 436, 449, 2005 Cal. LEXIS 8594, *31-32, 96 Fair Empl. Prac. Cas. (BNA) 601, 2005 Daily Journal DAR 9664, 151 Lab. Cas. (CCH) P60,048, 86 Empl. Prac. Dec. (CCH) P42,041 (Cal. 2005) ........................................................................................................................ 10

*Yu v. U.S. Dep't of Veterans Affairs*, 528 F. App'x 181, 185 (3d Cir. 2013) ............................ 14

*Zenak v. Police Ath. League of Phila.*, 2014 Phila. Ct. Com. Pl. LEXIS 449, *3 (Pa. C.P. 2014)36 ........................................................................................................................................ 38

*Zowayyed v. Lowen Co.*, 735 F. Supp. 1497, 1504(D. Kan. 1990)............................................ 10

## Statutes

43 P.S. §955(e)........................................................................................................................ 40

43 Pa. Cons. Stat. Ann §1422 ........................................................................................... 39, 40

43 Pa.C.S. §§ 1421-1428 ....................................................................................................... 34

62 Pa.C.S. § 2301.................................................................................................................... 37

Fed. R. Civ. P. 56(c) ................................................................................................................ 4

Fed.R.Evid. 408 .................................................................................................................... 22

PFPO .................................................................................................................. 4, 6, 7, 37, 42

Phila. Code. § 9-1103(h).......................................................................................................... 40

PHRA ................................................................................................. 4, 6, 7 37, 40, 42

PWL .................................................................................................................... 38, 39, 42

Title VII, §1981 ............................................................................... 6, 7, 26, 27, 37, 39, 42

Title VII, §1983 ................................................................................................................ 6, 28

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CHARLES BRENNAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | No.: 18-1417 |
| v. | : | |
| | : | |
| CITY OF PHILADELPHIA | : | |
| and | : | |
| MAYOR JAMES F. KENNEY | : | |
| and | : | |
| JANE SLUSSER | : | |
| and | : | |
| CHRISTINE DERENICK-LOPEZ | : | |
| | : | |
| Defendants. | : | |
| | : | |

**PLAINTIFF'S BRIEF IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

I.     **INTRODUCTION**

This case is about retaliation, plain and simple. Mr. Brennan, who dedicated almost his entire career to the City of Philadelphia, was pushed out by Defendants because he repeatedly raised serious concerns about race discrimination, waste, wrongdoing and illegalities.

Mr. Brennan worked for Defendant City *for more than 32 years*, including as a police officer and Deputy Police Commissioner. During his more than 3 decades of service to the City and its residents, Mr. Brennan performed his job well and was not issued any discipline for any reason. He returned back to work for the City in January 2016 as the Chief Information Officer ("CIO") for the City's Office of Innovation and Technology ("OIT"). During his two-year period of employment in this role, he performed his job satisfactorily and was not issued any discipline for any reason. In fact, both of his direct supervisors (Rhynhart and Derenick-Lopez) admit that he was qualified for the job and performed it well.

During the first year of his employment, Mr. Brennan developed a great, professional working relationship with his supervisor, Rebecca Rhynhart.  Ms. Rhynhart did not have any performance or behavior concerns with Mr. Brennan, never disciplined him for any reason and admitted that he was always professional when interacting with her.

During the last year of Mr. Brennan's employment, he was supervised by Defendant Derenick-Lopez.  During the first few months of Derenick-Lopez's supervision of Mr. Brennan, they had a good working relationship.  Derenick-Lopez treated Mr. Brennan in a professional manner.  However, starting in the Spring of 2017, Mr. Brennan began making complaints to Derenick-Lopez about two specific issues: (1) Nolan Atkinson's (Chief Diversity Officer) discriminatory race-related comments about hiring/retention in Mr. Brennan's department and (2) the wasteful, sham Request for Proposal ("RFP") prepared by the City, which favored one vendor to the exclusion of all others and Defendants' refusal to issue a competitive bid (RFP) for the procurement of police body-cameras.

*Once Mr. Brennan made these serious complaints, everything changed*.   Prior to making these complaints, Derenick-Lopez treated him a professional manner.  However, after the complaints, her treatment of him completely changed for the worse.  For example, in the late spring, summer and into the fall of 2017, Derenick-Lopez began interacting and speaking to Mr. Brennan in a completely rude and unprofessional manner, often yelling and screaming at him during meetings, failing to communicate with him about important department issues and generally treating him poorly.

In the fall and early winter of 2017, as Mr. Brennan continued to express complaints to Derenick-Lopez about Atkinson's discriminatory comments/actions and refused to ignore Comcast's violations of its contract with the City (unpaid violations which would cause waste to

the City and its taxpayers), Derenick-Lopez's treatment of him worsened.  She falsely accused him of making inappropriate comments and began mentioning sensitivity training.  Mr. Brennan was hurt and offended by Ms. Derenick-Lopez's suggestion and expressed that he believed her suggestion of sensitivity training was discriminatory and unfair.

In December 2017, during a conversation with Derenick-Lopez, Mr. Brennan continued to express concerns of race discrimination (regarding Atkinson's racially discriminatory conduct and as it related to Derenick-Lopez suggesting sensitivity training only to white male employees, including him).  In response, Derenick-Lopez ignored his complaint and never investigated it or looked into it.  Later in December 2017, Mr. Brennan expressed additional complaints to Derenick-Lopez about Comcast's failure to meet its contractual obligations and pushed back (i.e. refused to comply) on Defendants' directive to "take it easy on Comcast."

On January 12, 2018, *within a few weeks* of these final complaints of discrimination and waste, Mr. Brennan was terminated by Defendants.  At the time of his termination, he was given an unsolicited severance agreement (which is not City policy) which required him to waive any and all legal claims against Defendant.  Mr. Brennan did not accept it.

Defendants' discriminatory culture around diverse hiring/retention, their practice of instructing Mr. Brennan and others to consider applicants' race in making hiring decisions, their considering race in making hiring decisions themselves, their scolding and blaming him for making complaints about the sham RFP, their extremely hostile and antagonistic treatment of Mr. Brennan in response to his complaints about Atkinson's discriminatory comments, the fraudulent RFP and his refusal to "take it easy on Comcast," the extremely suspicious timing of events and the disputed, contradictory and inconsistent reasons for his termination demonstrate that Mr. Brennan's termination was retaliatory and unlawful.

Mr. Brennan can persuasively establish the elements of each of his legal claims and demonstrate that Defendants' alleged reasons for his termination ((1) for allegedly making inappropriate comments; (2) because he allegedly refused to attend sensitivity training; and (3) because of alleged conflicts with colleagues) are disputed, contradictory, inconsistent and disparate compared to their treatment of other similarly-situated employees.    In addition, Defendants' conflicting and contradictory testimony on key issues demonstrates that this matter cannot be resolved as a matter of law but instead must be decided by a fact-finder.

Based on the record evidence, Defendants retaliatory termination of Mr. Brennan violates Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §1981, the First Amendment to the U.S. Constitution (via §1983), the Pennsylvania Whistleblower Law ("PWL"), the Pennsylvania Human Relations Act ("PHRA") and the Philadelphia Fair Practices Ordinance ("PFPO").

Predictably but nonetheless inappropriate, Defendants' Motion fails to construe the facts in the light most favorable to Mr. Brennan, makes conclusory and unsupported assertions and ignores the abundant factual disputes that make summary judgment completely unwarranted.  As a result, Defendants' Motion should be denied in its entirety.

## II.    LEGAL ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In considering a motion for summary judgment, "a court does not resolve factual disputes or make credibility determinations, and must view facts and

inferences in the light most favorable to the party opposing the motion." *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1127 (3d Cir. 1995).

The moving party bears the burden of proving that no genuine issue of material fact is in dispute. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970). "[O]n summary judgment, the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-588 (quoting United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)). "If reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted." Gelover v. Lockheed Martin, 971 F.Supp. 180, 181 (E.D.Pa.1997).

"In employment discrimination cases, the summary judgment standard is 'applied with added rigor' because 'intent and credibility are crucial issues.'" *Walden v. St. Gobain Corp.,* 323 F. Supp. 2d 637, 641 (E.D. Pa. 2004) *quoting Stewart v. Rutgers, State Univ.,* 120 F.3d 426, 431 (3d Cir. 1997). "Employment discrimination cases center around a single question: why did the employer take an adverse employment action against the plaintiff? Because this 'is clearly a factual question,' *Chipollini v. Spencer Gifts, Inc.,* 814 F.2d 893, 899 (3d Cir. 1987), summary judgment is in fact rarely appropriate in this type of case. Simply 'by pointing to evidence which calls into question the defendant's intent, plaintiff raises an issue of material fact which, if genuine, is sufficient to preclude summary judgment.' *Id. See Sempier v. Johnson & Higgins,* 45 F.3d 724, 732033 (3d Cir.1995)(cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')." *Marzano v. Computer Science Corp.,* 91 F.3d 497, 509-10 (3d Cir. 1996).

In employment discrimination cases, the Third Circuit Court of Appeals has stated that "[s]ummary judgment is to be used sparingly!]" *Burlington v. News Corp.*, 759 F.Supp.2d 580, 600 (E.D.Pa.2010) (quoting *Doe v. CARS. Prot. Plus, Inc.*, 527 F.3d 358, 369 (3d Cir.2008)); *see also Wilkie v. Geisinger System Services*, 2014 WL 4672489, *5 (M.D. Pa. 2014); *Exter v. Wilkes-Barre Hosp. Co., LLC*, 2014 WL 4384363, *4 (M.D. Pa. 2014).

### B. Legal Argument

#### 1. Mr. Brennan has persuasively established his retaliation claims (under Title VII, 42 U.S.C. §1981 via §1983, the PHRA and the PFPO).

Title VII cases are governed by the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). The elements of a § 1981[1] discrimination claim are identical to those for a similar claim under Title VII. *Schurr v. Resorts Int'l Hotel Inc.*, 196 F.3d 486, 499 (3d Cir. 1999); *Senador v. Zober Indus.*,2009 U.S. Dist. LEXIS 36059,2009 WL 1152168(E.D. Pa. 2009). A "PHRA claim and Title VII are analogous and are, typically, construed together." *Stroud v. Susquehanna Cty.*, 2018 U.S. Dist. LEXIS 131672, *9, 2018 WL 3727388 (M.D. Pa 2018).[2] PFPO claims are also generally evaluated under the same legal framework as Title VII claims. *See Hong v. Temple University*,

---

[1] Section 1981 also encompasses "the claim of an individual (black or white) who suffers retaliation because he has tried to help a different individual, suffering direct racial discrimination, secure his § 1981 rights." *CBOCS West, Inc. v. Humphries*, 553 U.S. 442, 452, 128 S. Ct. 1951, 170 L. Ed. 2d 864 (2008); *Hisey v. QualTek USA, LLC*, 2019 U.S. Dist. LEXIS 141260, *40, 2019 WL 3936555 (E.D. Pa 2019). Mr. Brennan pursues § 1981 claims against Defendant City through §1983 and pursuant to the Supreme Court's holding in *Monell v. Dep't of Soc. Servs.*, 56 L.Ed.2d 611 (1978). Because Mr. Brennan's termination from employment was a direct result of unconstitutional and illegal customs, practices, and actions promulgated by the highest levels of Defendant City's government, Defendant City is in fact also liable for violations of § 1981.

[2] The PHRA, which is generally interpreted consistently with Title VII, likewise forbids employers from retaliating against employees for asserting their rights under the PHRA. See *Fogleman v. Mercy Hosp.*, 283 F.3d 561, 567 (3d Cir. 2002)("The language of the PHRA is . . . substantially similar to [Title VII and other federal] anti-retaliation provisions, and we have held that the PHRA is to be [] interpreted as identical to federal anti-discrimination laws except where there is something specifically different . . . .") (citing *Dici v. Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)); *Stroud v. Susquehanna Cty.*, 2018 U.S. Dist. LEXIS 131672, *16-17, 2018 WL 3727388

No. 98-4899, 2000 WL 694764, at *9 (E.D. Pa. 2000); *Darby v. Temple Univ.*, 216 F. Supp. 3d 535, 543, 2016 U.S. Dist. LEXIS 146606, *13, 100 Empl. Prac. Dec. (CCH) P45,668, 2016 WL 6190560 (E.D. Pa 2016).

"To establish a prima facie case of retaliation, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997); *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006)(Title VII retaliation claims); *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995); *Pierce v. City of Phila.*, No. 17-05539, 2018 U.S. Dist. LEXIS 217216, at *5 (E.D. Pa. 2018)(Title VII, 1981, PHRA and PFPO); *Treaster v. Conestoga Wood Specialties, Corp.*, 2010 U.S. Dist. LEXIS 63257, 98, 2010 WL 2606479 (M.D. Pa. 2010).

Under Title VII, "a victim of retaliation 'need not prove the merits of the underlying discrimination complaint' in order to seek redress." *Moore v. City of Phila.*, 461 F.3d 331, 344 (3d Cir. 2006)(quoting *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996)); *Scott v. Genesis Healthcare, Inc.*, 2016 U.S. Dist. LEXIS 111262, *61 (E.D. Pa. 2016).

Regarding Mr. Brennan's §1981 claim against Defendant City (via §1983), under *Monell v. Department of Social Services*, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978), a municipality may be liable for the constitutional torts of its employees in one of three ways: (1) if its employee "acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity;" (2) "when the individual has policy making authority rendering his or her behavior an act of official government policy;" or (3) "if an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior

7

official for liability purposes." *Id.*; *McGreevy v. Stroup*, 413 F.3d 359, 367 (3d Cir. 2005); *Sec. & Data Techs., Inc. v. Sch. Dist. of Phila.*, 145 F. Supp. 3d 454, 467, 2015 U.S. Dist. LEXIS 151554, *28-29, 98 Fed. R. Evid. Serv. (Callaghan) 1174 (E.D. Pa. 2015).

A plaintiff bringing a §1983 claim against a municipality must establish that the constitutional injury inflicted upon him was "permitted under [the municipality's] adopted policy or custom." *Mulholland v. Gov't County of Berks*, 706 F.3d 227, 237 (3d Cir. 2013). Regarding establishing a policy or custom, "[p]olicy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law. Custom ... may also be established by evidence of knowledge and acquiescence." *Id.*; *Fitzgerald v. Martin*, 2017 U.S. Dist. LEXIS 122228, *16-17, 2017 WL 3310676 (E.D. Pa. 2017); *see Pierce v. City of Phila.*, No. 17-05539, 2018 U.S. Dist. LEXIS 217216, at *5 (E.D. Pa. Dec. 28, 2018)(on the evidence presented, a reasonable jury could find that manager applied a discriminatory policy within the PDP by making promotional decisions on the basis of race in an effort to build a workforce in the PDP that reflects the demographics of the City); *See Sec. & Data Techs., Inc.,* 145 F. Supp. 3d 464, 468 (E.D. Pa. 2015)(finding "sufficient evidence upon which a reasonable fact finder could find that [the school district] had an unwritten policy of favoring race discrimination in contract awards" where the record showed that school district employees were directed to increase minority contracting and award contracts on the basis of race).

In this case, Defendants do not assert that Mr. Brennan has failed to establish that Defendant City was acting pursuant to policy or custom in carrying out its racially discriminatory

"diversity" plan. In fact, the record evidence demonstrates that the City enacted and effectuated a policy which based hiring and retention decisions on the race/ethnicity of the applicants/employees, that the policy was established by Defendant Mayor and the highest officials within the City (including Defendant Slusser, Defendant Derenick-Lopez and Nolan Atkinson) and that the policy was disseminated and forced upon other high level officers, employees and departments with the City, including Mr. Brennan. Defendants admit that their "diversity" policy required each City department to ensure that the racial demographics of their department matched the racial demographics of the City. Exhibit E at p. 56:16-24; 57:1-24; 58:7-13; 59:1-13; 64:2-21; 60:18-23; 72:2-15; 73:19-23; 74:4-24; 75:1-6; 76:6-24.; Exhibit H; Exhibit P at p. 70:12-24; 71:1-14; 72:7-20;   Exhibit N at p. 33:4-9, 17-24; 34:1, 24; 35:1-2; Exhibit O at p. 9, ¶61; Exhibit L at p. 117:3-24; 119:19-24; 120:1-2; Exhibit Z; Exhibit AA; Exhibit CC; Exhibit DD; Exhibit GG.  From this abundant evidence, a fact-finder could easily conclude that Defendant City was acting pursuant to a policy or custom consistent with the holding in *Monell* and that, as a result, Defendant City is liable for the violations in this case.

### a. Mr. Brennan engaged in protected activity.

In order for an employee's conduct to constitute a protected activity, "the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII." *Webb v. Merck & Co., Inc.,* 450 F. Supp. 2d 582, 600, 2006 U.S. Dist. LEXIS 64860, *46-48 (E.D. Pa. 2006); *See also Aman,* 85 F.3d at 1085 (stating that "protesting what an employee believes in good faith to be a discriminatory practice is clearly protected conduct.") (citations omitted); *Griffiths v. CIGNA Corp.,* 988 F.2d 457, 468, 1993 U.S. App. LEXIS 4870, 63 Fair Empl. Prac. Cas. (BNA) 1205, 61 Empl. Prac. Dec. (CCH) P42,108 (3d Cir. Pa. 1993)("a plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he

was acting under a good faith, reasonable belief that a violation existed'"). Thus, while all complaints or protests must be more than just "general complaints of unfair treatment," *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 701-02 (3d Cir. 1995), protection is not lost because an employee might be or is mistaken on the merits of his or her claim. *Id.*; *Mondaine v. Am. Drug Stores, Inc.*, 408 F. Supp. 2d 1169, 2006 U.S. Dist. LEXIS 871, 11 Wage & Hour Cas. 2d (BNA) 238, 17 Am. Disabilities Cas. (BNA) 1030 (D. Kan. 2006)("plaintiff's complaints to her co-workers that everyone was prejudiced and that her supervisors were racist constitute "protected activity" under Title VII and Section 1981 because those comments were passed on to management); *See Neiderlander v. Am. Video Glass Co.*, 80 Fed. Appx. 256, 261 (3d Cir. 2003); *Zowayyed v. Lowen Co.*, 735 F. Supp. 1497, 1504(D. Kan. 1990); *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1047, 116 P.3d 1123, 1134, 32 Cal. Rptr. 3d 436, 449, 2005 Cal. LEXIS 8594, *31-32, 96 Fair Empl. Prac. Cas. (BNA) 601, 2005 Daily Journal DAR 9664, 151 Lab. Cas. (CCH) P60,048, 86 Empl. Prac. Dec. (CCH) P42,041 (Cal. 2005); *See Truskoski v. ESPN, Inc.*, 823 F. Supp. 1007, 1012 (D.Conn. 1993)(holding that complaints about disparate impact of staffing policy ((which had "overtones of gender bias and discrimination")) constituted protected opposition).

It is well established that making ***even verbal complaints*** to management about activities prohibited by Title VII (or other anti-discrimination statutes) constitute protected activity. *See e.g. Baker-Bey v. Pennsylvania Dept. of Corrections*, WL 2856397 (E.D. Pa. 2008)(verbal complaints to management are protected activity); *See also Burton v. Pennsylvania Board of Probation and Parole,* No. 02-2573, 2002 WL 1332808, at * 5 (E.D. Pa. 2002); *Abramson v. William Paterson Coll. of New Jersey,* 260 F.3d 265, 288 (3d Cir.2001)); *Sgro v. Bloomberg L.P.*, 331 Fed.Appx. 932, (3d Cir. 2009)(verbal complaint that did not mention discrimination

but likened plaintiff to another older employee who was disfavored in lieu of younger employee constituted protected activity); *Seybert v. International Group*, Inc., WL 722291 (E.D. Pa. 2009)(employee's statement to manager that she felt uncomfortable when he stared at her breasts engaged in protected activity).

In this case, Mr. Brennan engaged in protected activity many times during the last eight (8) months of his employment. Exhibit E at p. 65:9-12. He first began making complaints to Derenick-Lopez about Defendants' racially discriminatory hiring/retention practices and Atkinson's racially derogatory comments in May 2017 and continued to express these discrimination complaints to Derenick-Lopez into the summer and fall of 2017. Exhibit E at p. 65:13-24; 67:15-17, 24; 68:1-20; 69:5-6, 17-24; 70:1-12, 17-22; 83:2-12; 84:6-10; 222:4-15; Exhibit L at p. 125:11-18; Exhibit N at p. 109:10-13; 127:18-24; 128:1-3; Exhibit II. In making these complaints, Mr. Brennan did not make vague references to unfair treatment or misconduct but stated specifically that he believed the racially derogatory comments Atkinson was making were discriminatory and inappropriate. *Id.* He also recounted each of the discriminatory comments Atkinson made to him and told Derenick-Lopez that based on these comments, he believed Atkinson was telling him to hire/retain people based on their race and that such conduct was illegal. *Id.*

**In December of 2017, a few weeks prior to his termination**, Mr. Brennan made additional complaints about Atkinson's racially discriminatory conduct and expressed to Derenick-Lopez that he believed she was discriminating against him for asking him (a white male) to attend sensitivity training but not Nolan Atkinson (an African-American male) or anyone else other than white male employees. Exhibit E at p. 193:11-24; 194:1-17; 196:12-18; 212:1-5; Exhibit L at p. 137:14-20; 140:14-23. These complaints were based on Mr. Brennan's

11

good faith belief that Defendants were engaging in racial discrimination against applicants, employees and him (based on Atkinson's and Derenick-Lopez's racially discriminatory comments and conduct). Thus, Mr. Brennan has established that he engaged in protected activity.[3]

### b. Mr. Brennan suffered an adverse employment action

It is undisputed that Mr. Brennan suffered an adverse employment action when he was terminated by Defendants in January 2018. Exhibit OO.

### c. There is a causal link between Mr. Brennan's protected activities and his termination.

Mr. Brennan can persuasively establish the causal link element of his retaliation claims via timing, ongoing antagonism and pretext.

A causal connection can be demonstrated through direct evidence or circumstantial evidence. *Abdul-Latif v. County of Lancaster*, 990 F. Supp. 2d 517, 530, 2014 U.S. Dist. LEXIS 1313, *24-25, 121 Fair Empl. Prac. Cas. (BNA) 533, 2014 WL 47773 (E.D. Pa. 2014); *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280 (3d Cir. 2000); *Kachmar v. Sungard Data Systems, Inc.,* 109 F.3d 173, 177 (3d Cir. 1997) ("These are not the exclusive ways to show causation, as the proffered evidence, looked at as a whole, may suffice to raise the inference"); *See Trujillo-Cummings v. Public Serv. Co.,* 173 F.3d 864 (10th Cir. 1999); *See also Morgan v. City of Jasper,* 959 F.2d 1542, 1547 (11th Cir.1992).

Some plaintiffs establish causation with (1) temporal proximity; (2) a pattern of antagonism following the protected activity; or (3) by showing that the reason for his or her alleged adverse action is pretextual. *Id.* However, a plaintiff "may rely on a 'broad array of

---

[3] Defendants do not challenge this element of Mr. Brennan's retaliation claim and admit that he engaged in protected activity.

evidence' to demonstrate a causal link" between protected activity and the adverse employment action. *Marra v. Phila. Hous. Auth.,* 497 F.3d 286, 302 (3d Cir. 2007), as amended (Aug. 28, 2007) (quoting *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 284 (3d Cir. 2000)).

> ### 1. The timing between Mr. Brennan's final complaints of discrimination (in December 2017) and his termination (on January 12, 2018) is unusually suggestive of retaliation and, in and of itself, establishes the causal link element of his retaliation claim.

In the Third Circuit, an inference of retaliation exists when an employee is terminated shortly after engaging in protected activity. *See Robinson v. S.E. Pa. Transp. Auth.,* 982 F.2d 892, 895 (3d Cir. 1993)(temporal proximity creates an inference of retaliation when the timeframe is "unusually suggestive."). Although the Third Circuit has not set forth the specific amount of time necessary to prove that temporal proximity is "unusually suggestive," Courts in this Circuit have typically found less than three months to be sufficient to raise an inference of retaliation. *See Fasold v. Justice,* 409 F.3d 178 (3d Cir. 2005)(reversing district court grant of summary judgment because court failed to consider inference created by adverse action within *less than three months* following engagement in protected activity); *See also Nesselrotte v. Allegheny Energy, Inc.,* WL 703395 (W.D. Pa. 2009)(*less than three months* between protected activity and termination sufficiently established causation element); *Planters Lifesavers,* 206 F.3d 271 (3d Cir. 2000)(finding that, among other things, *"three to four weeks"* helped raise an inference of causation); *Dohner v. Clearfield County,* 2009 U.S. Dist. LEXIS 77121, 61-62, 2009 WL 2762548 (W.D. Pa. 2009)(the Court finding that *a month* would be sufficiently close such that a reasonable jury could infer a causal connection between the complaint and plaintiff's discharge); *Hisey v. QualTek USA, LLC,* 2019 U.S. Dist. LEXIS 141260, *45-46, 2019 WL 3936555 (E.D. Pa 2019)(*eleven days* unusually suggestive); *Shellenberger v. Summit Bancorp,*

*Inc.*, 318 F.3d 183, 188 (3d Cir. 2003) (retaliation ***ten days*** after protected activity was unusually suggestive for purposes of ADA retaliation claim); *Yu v. U.S. Dep't of Veterans Affairs*, 528 F. App'x 181, 185 (3d Cir. 2013)(although courts tend to vary in analyzing the degree of temporal proximity necessary to be suggestive, the Third Circuit Court of Appeals has commented that the phrase means "within a few days but no longer than a month"); *Butler v. BTC Foods, Inc.*, 2014 U.S. Dist. LEXIS 11286, 20, 29 Am. Disabilities Cas. (BNA) 705, 2014 WL 336649 (E.D. Pa. 2014)(to the extent a jury believes Plaintiff's testimony regarding his request for leave, where he identified himself as in continued pain, the close temporal proximity of his request and his subsequent termination very soon thereafter weigh in favor of finding causation); *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007). But the mere passage of time is not legally conclusive proof against retaliation. *Robinson v. City of Pittsburgh,* 120 F.3d 1286, 1302 (3d Cir. 1997); *Robinson v. Se. Pa. Transp. Auth.,* 982 F.2d 892, 894 (3d Cir. 1993).

In this case, Mr. Brennan made repeated complaints of discrimination to Derenick-Lopez from the Spring of 2017 to a few weeks prior to his termination. Exhibit E at p. 56:16-24; 57:1-24; 58:7-13; 59:1-13; 60:1-17; 64:2-21; 65:13-24; 67:15-17, 24; 68:1-20; 69:5-6, 17-24; 70:1-12, 17-22; 222:4-15; Exhibit L at p. 125:11-18. The evidence reflects that he began complaining to Derenick-Lopez about race discrimination (regarding Atkinson's conduct/comments) after his meeting with Atkinson in May 2017 and that he continued to express these concerns into the summer and fall of 2017.

He made his final complaint of race discrimination to Derenick-Lopez in ***December 2017*** and was terminated approximately ***four (4) weeks*** later on ***January 12, 2018***.[4]  Exhibit E at p.

---

[4] Mr. Brennan recalls that he made his last complaint of race discrimination to Derenick-Lopez in early December 2017 (on a Friday)(*see* Exhibit E at p. 193:11-24) but does not recall the exact date in December 2017 on which he made this final complaint. But even assuming he made this final complaint on Friday December 1, 2017, he was fired 1 month and eleven days later.

193:11-24; 194:1-17; 196:12-18[5]; Exhibit L at p. 137:14-20; 140:14-23; Exhibit OO.   This extremely close temporal proximity is suspicious and unusually suggestive of retaliation.   This timing, alone, raises an inference of retaliation and establishes the causal link element of Mr. Brennan's retaliation claims.

### 2. Mr. Brennan was subjected to a pattern of ongoing antagonism and hostility after his complaints of discrimination.

In addition to the extremely close temporal proximity between his final complaint and his termination, Mr. Brennan can also establish the causal link element via evidence of antagonism and animus.

If temporal proximity is not unduly suggestive of a causal connection, the Court "may look to the intervening period for demonstrative proof, such as antagonistic conduct or animus against the employee, or other types of circumstantial evidence, such as inconsistent reasons given by the employer for [the adverse employment action] or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole." *Marra*, 497 F.3d at 302; *Pierce v. City of Phila.*, No. 17-05539, 2018 U.S. Dist. LEXIS 217216, at *5 (E.D. Pa. 2018)(although the final adverse action occurred more than seven months after one of the plaintiff's protected activities, the plaintiff still established a causal connection because of "a pattern of antagonism" toward the plaintiff following the protected activity); *Exter v. Wilkes-Barre Hosp. Co., LLC*, 2014 WL 4384363, *4 (M.D. Pa. 2010)(denying employer's motion for summary judgment on FMLA retaliation claim where evidence of antagonism included testimony from plaintiff that after she filed for FMLA, her supervisor "acted differently towards

---

[5] During Mr. Brennan's final race discrimination complaint to Derenick-Lopez, he expressed concerns about Atkinson's racially discriminatory comments regarding hiring/retention and Derenick-Lopez's discriminatory conduct of asking only white males (Mr. Brennan and Jerry Connors), to go to sensitivity training but not Atkinson (who had objectively made even more egregious comments than Mr. Brennan is alleged to have made). Exhibit E at p. 193:11-24; 212:1-5.

her," that she "didn't feel welcome," including by being ignored and that "things were held against [her]"). *Crawford v. George & Lynch, Inc.*, 2013 U.S. Dist. LEXIS 174892 (D. Del. 2013)(denying summary judgment on Title VII retaliation claim explaining that antagonism and/or temporal proximity will still suffice to establish but-for causation post-*Nassar*); *Amos v. McNairy County*, 2014 U.S. Dist. LEXIS 9935 (W.D. Tenn. 2014)(denying summary judgment and explaining that timing or evidence as a whole is sufficient to establish the *prima facie* element of causation); *Bennett v. Riceland Foods*, Inc., 721 F.3d 546 (8th Cir. 2013)(temporal proximity and evidence of antagonism supported jury verdict in Title VII retaliation case under *Nassar* but-for standard); *Bishop v. Ohio Dep't of Rehab. & Corr.*, 529 Fed. Appx. 685, 695 (6th Cir. 2013)(reversing grant of summary judgment in Title VII retaliation case explaining that post-*Nassar* evidence that may infer retaliation such as temporal proximity and negative comments to employee will suffice to still establish causation element and stating further that the *prima facie* case is still intended to create a minimal burden upon the plaintiff); *Sabrina Sims v. District of Columbia*, U.S. Dist. LEXIS 15181, at * 23 (D. D.C. 2014)(evidence of temporal proximity was enough to establish a question of fact as to multiple alleged acts of retaliation post-*Nassar*); *Baker v. Becton, Dickinson & Co.*, 532 Fed. Appx. 601 (6th Cir. 2013)(In reversing a grant of summary judgment, the court explained that a plaintiff can demonstrate discrimination at the summary judgment stage as to "but for" claims through circumstantial evidence including that a reasonable jury may disbelieve the employer's proffered reason for termination).

This case is analogous to *Pierce v. City of Phila.*, No. 17-05539, 2018 U.S. Dist. LEXIS 217216, at *43-44 (E.D. Pa. 2018; Pappert, J.) where the Court found that, although one of the adverse actions against the plaintiff occurred more than seven months after one of the plaintiff's

protected activities, the plaintiff still established a causal connection because of "a pattern of antagonism" toward the plaintiff following the protected activity (including through evidence that the defendants treated the plaintiff "dismissively," denied her staff and ignored her requests for overtime). *Id.*[6] In this case, almost immediately after Mr. Brennan began complaining to Derenick-Lopez about Atkinson's discriminatory conduct and comments, he was subjected to extremely negative and antagonistic conduct by Derenick-Lopez, including her yelling and screaming at him during meetings, treating him unprofessionally, speaking to him rudely, failing to communicate with him about important work-related matters, taking staff away from him without his knowledge and ignoring his serious complaints.  Exhibit E at p. 42:10-24; 43:1-14; 45:14-21; 175:15-24; 176:1-21; 177:2-23; 178:21-24; 179:1-24; 181:9-20; 182:17-24; 183:2-23; 186:24; 187:1-15; 195:1-6; 197:18-24; 198:15-17.  Mr. Brennan testified to specific and repeated instances of this hostile conduct, which occurred from the Spring of 2017 to December 2017.  *Id.* Thus, like the plaintiff in *Pierce*, Mr. Brennan has also established the causal link element of his retaliation claim via antagonism and hostility.

Lastly, Mr. Brennan can establish the causal link element of his retaliation claims via pretext, as set forth below.

### d. Defendants' proffered reasons for termination are pretextual.

To defeat summary judgment when the defendant answers the plaintiff's *prima facie case* with legitimate, non-discriminatory reasons for its action, the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; *or* (2) believe that an invidious discriminatory

---

[6] The Court determined that even in the absence of proof of the actual dates of the antagonistic conduct, the plaintiff's evidence of antagonism was sufficient because it occurred sometime in the intervening period (after the plaintiff's October 3, 2016 complaint and before the May 27, 2017 adverse action). Id. at *43-44.  The Court went on to conclude that the plaintiff also established pretext with evidence that her alleged performance issues were disputed (and discipline downgraded) combined with the evidence of antagonism in her *prima facie* case. *Id.*

reason was more likely than not a motivating or determinative factor of the employer's action. *Fuentes v. Perskie,* 32 F.3d 759, 764 (3d Cir.1994); *Sheridan v. E.I. DuPont de Nemours and Co.,* 100 F.3d 1061 (3d Cir.1996) (en banc), *cert. denied,* 521 U.S. 1129, 117 S.Ct. 2532, 138 L.Ed.2d 1031 (1997); *Jalil v. Avdel Corp.,* 873 F.2d 701, 708 (3d Cir. 1989).

Evidence used to establish a *prima facie* case of discrimination may also be relied upon to demonstrate pretext, since nothing about the McDonnell Douglas-Burdine burden-shifting framework requires a court to ration the evidence presented in a particular case among the *prima facie* and pretext stages of the analysis. *Doe v. C.A.R.S. Protection Plus, Inc.,* 527 F.3d 358, 370 (3d Cir. 2008); *EEOC v. Grane Healthcare Co.,* 2014 U.S. Dist. LEXIS 28477, 74, 29 Am. Disabilities Cas. (BNA) 655 (W.D. Pa. 2014).

"The fact-finder may infer from the combination of the prima facie case, and its own rejection of the employer's proffered reason, that the employer engaged in the adverse employment action for an invidious reason." *Johnson v. Penske Truck Leasing Co.,* 949 F. Supp. 1153, 1172, 1996 U.S. Dist. LEXIS 19383 (D.N.J. 1996).

The Third Circuit has explained that to prove pretext, a plaintiff may rely on:  (1) the defendant's credibility (or lack thereof); (2) the timing of an employee's dismissal; and (3) the employer's disparate treatment of the employee. *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638-39 (3d Cir. 1993); *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644-45 (3d Cir. 1998), *citing Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994).[7]

A plaintiff may also point to inconsistent reasons for termination, inconsistent testimony from supervisors, a pattern of antagonism, temporal proximity between the events plus

---

[7] "For example, the plaintiff may show that the employer has previously discriminated against [the plaintiff], that the employer has previously discriminated against other persons within the plaintiff's protected class, or that the employer has treated more favorably similarly situated persons not within the protected class." *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644-45 (3d Cir. 1998), *citing Fuentes v. Perskie,* 32 F.3d 759, 765 (3d Cir. 1994).

inconsistencies in the defendant's testimony and certain conduct towards others. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000); *Horton v. Amerway, Inc.*, 2013 U.S. Dist. LEXIS 101105, 33, 119 Fair Empl. Prac. Cas. (BNA) 633, 2013 WL 3802459 (W.D. Pa. 2013); *See Waddell v. Small Tube Products, Inc.*, 799 F.2d 69, 73 (3d Cir.1986)(inconsistent explanation for termination can establish causal link and pretext); *see also EEOC v. L.B. Foster Co.*, 123 F.3d 746, 753–54 (3d Cir.1997), cert. denied, 522 U.S. 1147, 118 S.Ct. 1163, 140 L.Ed.2d 174 (1998)(inconsistent testimony from defendant).

Essentially, there are "no limits on what [courts] have been willing to consider." *Id.*; *See e.g. Rumanek v. Indep. Sch. Mgmt.*, 2014 U.S. Dist. LEXIS 3091 (D. Del. 2014)(denying summary judgment on Title VII retaliation claim explaining that temporal proximity and inconsistencies will continue to establish causation in a circumstantial evidence case post-*Nassar*); *See, e.g., Sorba v. Pennsylvania Drilling Co.*, 821 F.2d 200, 205 (3d Cir. 1987) ("the testimony of the movant's witnesses was inconsistent regarding whether they believed [the Plaintiff's] performance caused the unsatisfactory job results").

In addition, the employee need not always offer evidence sufficient to discredit all of the rationales advanced by the employer. "If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder." *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994); see also *Kautz v Met-Pro Corp*, 412 F.3d 463,467 (3d Cir. 2005); *Tomasso v. Boeing Co.*, 6445 F.3d 702, 707 (3rd Cir. 2006); *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 283 (3d Cir. 2001). The "rejection of some explanations may so undermine the employer's credibility as to enable a rational factfinder to disbelieve the remaining rationales, even where the employee fails to produce evidence particular to those rationales." *Fuentes*, 32 F.3d at 764 n. 7.

To discredit the employer's articulated reason, the plaintiff does not need to produce evidence that necessarily leads to the conclusion that the employer acted for discriminatory reasons, *Sempier v. Johnson & Higgins,* 45 F.3d 724, 732-33 (3d Cir.1995)(cases in which plaintiff attacks employer's stated reasons for adverse employment action 'must be resolved by a jury and cannot be resolved on summary judgment')"; *Brewer v. Quaker State Oil Refining Corp.,* 72 F.3d 326, 332 (3d Cir.1995)(denying summary judgment where the record evidence contradicted the employer's assertion that the plaintiff was fired due to deficient performance). *Id.* at 332.

Making a judgment about whether pretext exists is "a fact-based inquiry," and so the plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder *could* rationally find them unworthy of credence," *Fuentes,* 32 F.3d at 765 (internal citations omitted); *Kautz v. Met-Pro Corp.,* 412 F.3d 463, 468, 2005 U.S. App. LEXIS 11559, 104 Fair Empl. Prac. Cas. (BNA) 381, 86 Empl. Prac. Dec. (CCH) P41,979 (3d Cir. Pa. 2005); *See e.g. Rumanek v. Indep. Sch. Mgmt.,* 2014 U.S. Dist. LEXIS 3091 (D. Del. 2014)(denying summary judgment on Title VII retaliation claim explaining that temporal proximity and inconsistencies will continue to establish causation in a circumstantial evidence case post-*Nassar*).

It is well-settled that "[m]otive is a question of fact that must be decided by the jury, which has the opportunity to hear the explanations of both parties in the courtroom and observe their demeanor." *Monteiro v. City of Elizabeth*, 436 F.3d 397, 405 (3d Cir. 2006); *see also Reilly v. City of Atlantic City*, 532 F.3d 216, 233 (3d Cir. 2008); *Brunelle v. City of Scranton*, 2019 U.S. Dist. LEXIS 62957, 2019 WL 1584601, at *7 (M.D. Pa. 2019); *Kisner v. DeFazio*, 2009 U.S.

Dist. LEXIS 117160, 2009 WL 4891837, at *7 (W.D. Pa. 2009); *Brown v. Pa., Dep't of Corr.,* 2019 U.S. Dist. LEXIS 142132, *30 (M.D. Pa 2019).

A plaintiff may also rely on evidence of disparate treatment (i.e. comparator evidence) to support its pretext argument. *Josey v. John R. Hollingsworth Corp.,* 996 F.2d 632, 638-39 (3d Cir. 1993); *Wren v. City of Luzerne,* 2015 WL 3831183, *5 (M.D. Pa. 2015)(where evidence demonstrates that a comparator engaged in acts of "comparable seriousness" but was disciplined differently, a factfinder may decide whether the differential treatment is attributable to discrimination or some other cause); *See Justiano v. G4S Solutions, Inc,* 291 F.R.D. 80, 82 (D. NJ 2013). In determining whether employees are comparators, Courts consider a variety of factors. Specifically, in disciplinary cases or in the context of personnel actions, for example, the relevant factors often include a "showing that the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Radue v. Kimberly–Clark Corp.,* 219 F.3d 612, 617–18 (7th Cir.2000); *Wayne v. Glen Mills Schools,* 2010 WL 2044489 (E.D.Pa. 2010); see *Williams v. Potter,* Civil Action No. 07-02, 2008 WL 282349, at *3 (W.D.Pa. 2008) ***"similarly situated" does not mean "identically situated,"***; *Red v. Potter,* 211 F. App'x 82, 84 (3d Cir.2006); *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 352 (6th Cir.1998); *Tyler v. SEPTA,* No. Civ. A. 99-4825, 2002 WL 31965896, at *3 (E.D.Pa. 2002) (alterations in original), *aff'd,* 85 F. App'x 875 (3d Cir.2003); *see also Jackson v. Bob Evans-Columbus,* No. 2:04cv559, 2006 WL 3814099, at *7 (W.D. Pa. 2006).

An offer of severance can also constitute evidence of pretext. *See Staffieri v. Northwestern Human Servs.,* 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013)(an

employer who offered severance at the time of termination when policies did not require upon

condition of waiving FMLA claim supported finding of pretext in wrongful termination claim,

among other evidence); *Bartlett v. NIBCO Inc.*, 2011 U.S. Dist. LEXIS 28072 (N.D. Ind.

2011)(finding that a severance agreement offered contemporaneously to when the employee was

terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was

retaliatory"); *Karl v. City of Mountlake Terrace*, 2011 U.S. Dist. LEXIS 59085 (W.D. Wash.

2011)(severance agreements are admissible in retaliation claims when made contemporaneous to

termination, as they are not governed by Fed.R.Evid. 408).

In this case, there is an abundance of evidence from which a fact-finder could disbelieve

Defendants' proffered reason for termination or believe that Mr. Brennan's termination was

based on invidious retaliation.  This non-exhaustive list includes:

> * ***Timing:*** Mr. Brennan was terminated within a mere ***four (4) weeks*** after his final
> complaint of race discrimination to Derenick-Lopez.  This timing is suspicious,
> suggestive and is persuasive evidence of retaliatory animus.  *See Staffieri v.*
> *Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115, \*12, 118 Fair Empl. Prac.
> Cas. (BNA) 833, 2013 WL 2245639 (E.D. Pa. 2013); *See Drwal v. Borough of West*
> *View, Pa.*, 617 F. Supp. 2d 397, 422 (W.D. Pa. 2009); *Williams v. Phila. Hous. Auth.*
> *Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (close temporal proximity can
> evidence discriminatory animus).

> * ***Antagonism:*** As set forth above, Derenick-Lopez subjected Mr. Brennan to substantial
> antagonistic treatment and hostility between the time of his initial discrimination
> complaints and his termination. Such treatment constitutes persuasive     evidence     of
> invidious retaliation sufficient to establish pretext.

> * ***Blatant Factual Disputes regarding the alleged reasons for termination:*** Defendants
> claim that Mr. Brennan was terminated because (1) he allegedly made inappropriate
> comments in July and October 2017; (2) he allegedly refused to attend sensitivity
> training; and (3) he allegedly had inter-personal conflicts and disputes with staff.  *See*
> Exhibit R at p. 2-3.  All of these alleged reasons for termination are ***disputed***.

First, whether Mr. Brennan made the comments Defendants allege he made is
***disputed***.  Specifically, Defendants claim that Mr. Brennan was asked to go to sensitivity
training and ultimately terminated (at least in part) for saying that the head of the SAP
company was "too young to run the company." Exhibit R at p. 2, No. 4c; Exhibit T at p.

1. *Mr. Brennan categorically denies that he said this and testified that he, in fact, did not make such a comment.* Exhibit E at p. 167:11-19. In addition, Defendants claim that Mr. Brennan said that those in the audience at the Smart Cities conference could not afford the food being served after the conference. Id. Mr. Brennan also disputes that he singled out the audience members and instead testified that he merely made a joke that "most of us" can't afford the fancy food being served. In fact, a City employee described Mr. Brennan's comment as a "joke" and an attempt to merely get people to stay until the end of the conference. Exhibit RR. Since these alleged comments, which served as the basis for Mr. Brennan's termination, are disputed (and in fact denied), only a fact-finder can decide what happened, what was said and whether these "comments" were the real reason for Mr. Brennan's termination. If a jury concludes that Mr. Brennan did not make one or more of the comments Defendants claim he made, they could then conclude that Defendants have fabricated and/or embellished a basis (i.e. additional "comments") on which to terminate Mr. Brennan. This is the epitome of pretext.

Next, whether Mr. Brennan refused to go to/attend sensitivity training is also *disputed.* When the facts are viewed in the light most favorable to Mr. Brennan, the record clearly establishes that *he never refused to go to sensitivity training and never told Derenick-Lopez that he was refusing to attend.* Instead, he specifically told her that if she ordered him to attend, *he would attend* but that he thought being asked to attend sensitivity training was discriminatory and inappropriate. Exhibit E at p. 193:11-24. Immediately upon making this last complaint of discrimination, Ms. Derenick-Lopez no longer asked Mr. Brennan to attend sensitivity training, never mandated or ordered him to go and in fact, completely dropped the subject and never brought it up again. In addition, Jackie Linton (who initially worked with Mr. Brennan in October 2017 regarding this issue) provided a sworn statement indicating that Mr. Brennan never refused to go to sensitivity training and that she (Ms. Linton) never told Derenick-Lopez that he refused to go. Exhibit K. If a jury believes that Mr. Brennan did not refuse to go to sensitivity training, then they could also easily conclude that Defendants' proffered reason for his termination (i.e. that he refused to go) is untrue. This is also the epitome of pretext.

Moreover, although Defendants claim in litigation that one of the reasons for Mr. Brennan's termination was his alleged "inter-personal conflicts" with staff members, this allegation is not only disputed by Mr. Brennan but also not mentioned in Mr. Brennan's termination letter or on any internal termination documents. Exhibit OO; Exhibit PP. In addition, Mr. Brennan was never disciplined for any alleged conflicts with staff members and never told that he was being terminated for this alleged reason. From this evidence, a jury could conclude that this last proffered reason for termination is inconsistent, contradictory and unworthy of credence (i.e. pretextual). In fact, a jury will likely conclude that this piling on of alleged reasons for his termination represents the proverbial "kitchen sink."

**\* *Contradictions/Inconsistencies in Defendants' Testimony:*** Mayor Kenney, Derenick-Lopez and Slusser have also given contradictory and inconsistent explanations regarding key issues, which also demonstrate the pretextual nature of their conduct. First,

Derenick-Lopez testified that Ms. Linton specifically told her that Mr. Brennan refused to go to sensitivity training. **BUT** Ms. Linton swore that she never told Derenick-Lopez that Mr. Brennan refused or was refusing to go to sensitivity training. Next, although Defendants' Interrogatory Responses and Termination Letter indicate that Mr. Brennan was terminated, at least in part, for comments he made, Slusser testified that Mr. Brennan was not terminated for any comments. What's more, Derenick-Lopez told Mr. Brennan that *the Mayor's Office* wanted him to "take it easy" on Comcast. Exhibit E at p. 202:13-24; 203:1-13;204. But Ms. Slusser and the Mayor testified that the Mayor and his office never said that. Exhibit M at p. 150:20-24; 151:1-3; Exhibit O at p. 15-16, ¶109-113. Ms. Derenick-Lopez previously told Jackie Linton that "the Mayor wanted Mr. Brennan to be let go" (Exhibit K at p. 3, ¶19) but Mayor Kenney denies that he ever said to anyone that he wanted Mr. Brennan to be let go or terminated. Exhibit O at p. 24, ¶174-175. Derenick-Lopez testified that she does not and has not issued any written discipline to any high-level employees (which was an attempt to cover up her complete and utter failure to ever discipline Mr. Brennan). Exhibit L at p. 75:1-20. But she issued Jerry Connors (who she admitted is a high-level employee) a written disciplinary letter in 2017 for using an offensive, racially inappropriate comment in the workplace during a meeting with colleagues. The letter identified the inappropriate behavior and stated that any future inappropriate conduct may result in termination. Exhibit K at p. 3, ¶20-22; Exhibit L at p. 65:1-9. Regarding the diversity initiative, Ms. Derenick-Lopez testified that Mr. Atkinson told her that Mr. Brennan was doing a "great job" of meeting the racial demographics within his department and that no one told her that Mr. Brennan had any problems with complying with the diversity initiative. Exhibit L at p. 121:16-24; 122:1-6; 122:23-24; 125:1-3. But Ms. Slusser testified that she told Ms. Derenick-Lopez that Mr. Brennan's diversity numbers "were not great." Exhibit M at p. 179:23-24; 180:1-2. And Ms. Slusser testified that Atkinson told her that Mr. Brennan's department wasn't meeting the goals of the diversity plan. Exhibit M at p. 119:19-22. In a July 19, 2017 e-mail from Ms. Slusser to Mr. Atkinson, Slusser specifically identifies Mr. Brennan and his department (OIT) as not complying with the diversity goals. In the e-mail, Ms. Slusser asserts that Mr. Brennan "do[es] not appear to be fully bought into our diversity and inclusion hiring practices and their number this year were not great. We would like the Mayor to reiterate this as a priority to them." Exhibit M at p. 177:20-24; 178:1-16; 179:3-10; Exhibit BB. Ms. Slusser testified that she specifically spoke to Mr. Atkinson about the complaints employees were making to Derenick-Lopez about Atkinson's comments. Exhibit M at p. 127:16-23. *But* Mr. Atkinson testified that Ms. Slusser never had such conversations with him. Exhibit N at p. 69:2-16. These abundant contradictions, inconsistencies and disputed issues are additional, substantial evidence of pretext and cannot possibly be resolved as a matter of law.

***\* Defendants' Complete and Utter Failure to Investigate Mr. Brennan's Complaints:*** Despite that Mr. Brennan made extremely serious and detailed complaints of race discrimination, waste, fraud and illegalities, Defendant did absolutely nothing to investigate his complaints or remedy the conduct. Defendants' deliberate and willful refusal to report his concerns, investigate them or otherwise remedy them is not only troubling but is evidence of animosity and animus. From this conduct (or lack thereof), a jury could very easily conclude that Defendants were annoyed at Mr. Brennan for

complaining and wanted to spend time finding ways to get rid of him rather than resolving his complaints. This is also damning evidence of pretext.

* ***Severance Offer:*** Despite that Defendants admit that the City does not have any written policy or procedure requiring or even suggesting that a terminated employee should be provided a severance, Defendants nonetheless offered Mr. Brennan a severance agreement (which included an agreement to pay him money in exchange for him agreeing to waive any and all legal claims against the company, including but not limited to claims under Title VII, §1981 and state statutes/laws. Exhibit L at p. 208:12-17; Exhibit O at p. 24, ¶181. Exhibit OO at p. 2-5. This conduct, especially in combination with the other evidence of retaliation, is further evidence of pretext.

* ***Disparate Treatment:*** Defendants treated similarly-situated employees who did not complain about race discrimination, waste or illegalities much more favorably than Mr. Brennan. See Plaintiff's Counter-Statement of Facts at ¶ 181-193. For example:

> 1. Nolan Atkinson: just like Mr. Brennan, he worked as a City Officer, was managed by Defendant Slusser and was subject to the same City policies and procedures as Mr. Brennan. Despite that Atkinson repeatedly made disparaging and offensive race-related comments to Mr. Brennan and other City Officials and basically instructed Mr. Brennan and other City Officials to engage in unlawful hiring/retention practices, Atkinson was never scolded, reprimanded, disciplined, warned, suspended, asked to attend sensitivity training or terminated.

> 2. Brian Abernathy: just like Mr. Brennan, he also worked as a City Officer and regarding his performance and conduct violations, was managed by Defendant Slusser. He was required to abide by the same policies and procedures as Mr. Brennan. Abernathy blatantly violated established City policy by improperly contacting ICE to report the release of prisoners. Abernathy also berated a colleague of his. Defendant Mayor, Slusser and Derenick-Lopez were all aware and involved in these issues. Defendants did not issue Abernathy discipline for this conduct, send him to sensitivity training or terminate him. Instead, Defendants promoted him after he engaged in such conduct.

> 3. Defendant Christine Derenick-Lopez: just like Mr. Brennan, she worked under the management of Defendant Slusser (and Defendant Mayor) and was required to follow the same policies and procedures as Mr. Brennan. Despite that she repeatedly and continuously used profanity during meetings, which Mr. Brennan, Ms. Linton and others found offensive and inappropriate, and of which Slusser witnessed, Derenick-Lopez was never disciplined, asked to attend sensitivity training or terminated.

* ***Startling Admission:*** In her deposition, Slusser specifically testified that Derenick-Lopez informed her that Mr. Brennan complained that being asked to attend sensitivity training was discriminatory. Exhibit M at p. 108:8-13. Later, she admitted that Mr. Brennan was terminated for the "push back" he gave Derenick-Lopez on sensitivity

training. Id. at p. 153:21-24; 154:1-7. A very rationale inference to be drawn from this testimony is that Mr. Brennan's "push back" included his complaint of race discrimination (which he made during the same conversation about sensitivity training) and that such "push back" led to his termination. This admission is powerful evidence of retaliatory animus and motive.

*\* Mr. Brennan's Exemplary Employment Record/Lack of Discipline*: The fact that Mr. Brennan was employed with the City for more than 32 years, has an exemplary employment history with the City, was qualified for the CIO position, performed it satisfactorily and *was not issued any discipline* at all throughout his two-year period of employment in OIT also undermines and contradicts Defendants' alleged reasons for his termination. Defendants failed to follow any progressive discipline policy. A jury is very likely to wonder: if Mr. Brennan really engaged in all the negative conduct that Defendants claim led to his termination, why was he never warned or disciplined for such conduct? A logical answer to this question is that Mr. Brennan did not engage in the conduct alleged by Defendants and that, even if he engaged in some of it, Defendants did not think it was serious enough to warrant discipline, let alone termination. This is evidence of pretext because it casts substantial doubt on the proffered reasons for Mr. Brennan's termination.

This persuasive evidence of pretext warrants denial of Defendants' Motion. Only a fact-finder can resolve all of these disputed issues. *See Pierce v. City of Phila.*, 2018 U.S. Dist. LEXIS 217216, *44-45, 2018 WL 6832093 (E.D. Pa. 2018, Pappert, J.)(holding that fact-finder could conclude City's proffered reasons for termination (i.e. performance and conduct issues) were pretextual based on the causal link evidence plus disputes regarding whether the plaintiff engaged in the conduct alleged by the defendant).

### e. Mr. Brennan has established an underlying §1981 violation.

Defendants assert that Mr. Brennan cannot establish his §1981 retaliation claim because he cannot prove an underlying violation of §1981. This argument ignores the actual facts of the case and Defendants' discriminatory (and illegal) conduct. Mr. Brennan can convincingly establish that Defendants engaged in unlawful employment discrimination, which is a clear and obvious violation of §1981.

At the outset, Courts within the Third Circuit have come to different conclusions regarding the extent and scope of the decision in *Estate of Oliva ex rel. McHugh v. New Jersey*, 604 F.3d 788, 798 (3d Cir. 2010).[8]   Although the Court in *Oliva*, in dicta, held that "[i]n a retaliation case a plaintiff must demonstrate that there had been an underlying section 1981 violation," *Estate of Oliva*, 604 F.3d at 798, later Third Circuit opinions have explained that, consistent with *Oliva*, in trying to prove an underlying violation, a plaintiff merely needs to show that he/she acted under a good faith, reasonable belief that a violation existed." *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015); *Castleberry v. STI Grp.*, 863 F.3d 259, 267, 2017 U.S. App. LEXIS 12611, *13, 101 Empl. Prac. Dec. (CCH) P45,840, 2017 WL 2990160 (3d Cir. 2017).

In this case, the racially discriminatory hiring/retention practices about which Mr. Brennan complained are illegal under §1981.   Specifically, Atkinson and Derenick-Lopez (as well as Slusser and Mayor Kenney) repeatedly conveyed to Mr. Brennan that he should consider race in making hiring decisions and that he must ensure that the racial demographics of the City's workforce match those of the City's population.   In addition, Derenick-Lopez admitted to Mr. Brennan that she did not hire a white male applicant because of his race.   Exhibit E at p. 87:17-24; 88:1-2.   This is the exact conduct about which Mr. Brennan complained and the exact conduct prohibited by §1981.   *See Pierce v. City of Phila.*, No. 17-05539, 2018 U.S. Dist. LEXIS 217216, at *5 (E.D. Pa. 2018)(holding that a jury could find discrimination where "the record shows that the City has a goal of building a racially diverse municipal workforce that reflects the city's demographics, Mayor Kenney instructed [an employee] to implement this "unwritten

---

[8] *Compare Ellis v. Budget Maint., Inc.*, 25 F. Supp. 3d 749 (E.D. Pa. 2014) with *Claybourne v. HM Ins. Group*, 2015 U.S. Dist. LEXIS 157910, *17-19 (W.D. Pa 2015).

policy" in the PDP once she became commissioner and there was evidence that indicated a preference for applicants of color).

### 2. Mr. Brennan has also persuasively established his First Amendment Retaliation Claim.[9]

In order to state a claim of retaliation under the First Amendment, a plaintiff must show: "(1) that [she] engaged in a protected activity, (2) that defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights, and (3) that there was a causal connection between the protected activity and the retaliatory action." *Lauren W. ex rel Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (citing *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006)); *Alers v. City of Philadelphia*, 919 F. Supp. 2d 528, 553 (E.D.Pa. 2013)(internal citations omitted). Stated differently, the plaintiff must demonstrate that the protected speech was "a 'substantial factor' in the alleged retaliatory action." *McAndrew v. Bucks County Bd. Of Comm'rs*, 183 F.Supp.3d 713, 731 (E.D. Pa. 2016) (citing *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009)). If a plaintiff makes such a showing, the burden then shifts to the defendant to show that, even if the protected speech had not taken place, it would have taken the same action. *Id.*

The First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern. *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Specifically, "a public employee's speech is protected under the First Amendment when (1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern, and (3) the government employer did not have an adequate justification for treating the

---

[9] Mr. Brennan's 1st Amendment retaliation claim against Defendant City is pursued through §1983. *See e.g. Damiano v. Scranton Sch. Dist.*, 135 F. Supp. 3d 255, 267 (M.D. Pa. 2015)(*Monell* liability under First Amendment Retaliation may lie where terminated employee's adverse action arose out of official actions of high-level municipal management).

employee differently from any other member of the general public as a result of the statement he made. *Kline v. Valentic*, 283 Fed. Appx. 913, 916, (3rd Cir. 2008)(internal citations omitted). "Public employees do not speak 'as citizens' when they make statements pursuant to their official duties." *Id.*

To determine whether a public employee's speech is a matter of public concern, courts consider whether the speech relates "to any matter of political, social or other concern to the community." *Brennan v. Norton*, 350 F.3d 399, 412 (3rd Cir. 2003). "Speech may involve a matter of public concern if it attempts to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials." *Id.*

Complaints about whistleblowing activities, violations of laws and – in particular – concerns of "racial discrimination plainly fall within the ambit of speech about matters of public concern," as "the Supreme Court clearly established that racial discrimination is inherently a matter of public concern." *Larry v. Powerski*, 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015), citing, *Connick v. Myers*, 461 U.S. 138 (1983); *Dougherty v. Sch. Dist.*, 772 F.3d 979, 988 (3rd Cir. 2014)(public employee at issue (who reported misconduct in awarding a government school district contact to a newspaper) did not speak "pursuant to his official duties" because there was no evidence presented that his speech (communication with a newspaper) "fell within the scope of his routine job responsibilities") *Id.*

In *Larry v. Powerski,* 148 F. Supp. 3d 584, 600 (E.D. Mich. 2015), the Court rejected assertions that an "employee" somehow sheds First Amendment Protections when making a concern of racial concerns known to his or her employer, citing the Supreme Court in *Lane v. Franks*, 189 L.Ed.2d 312 (2014), and explaining:

> [T]he mere fact that a citizen's speech concerns information acquired by virtue of his public employment does not transform that speech into employee—rather than

citizen—speech." *Ibid.* It would be unusual (and contrary to the very core of the First Amendment) to conclude, as the defendant urges, that a public employee surrenders her First Amendment protections any time she complains of unlawful activity, no matter how invidious, merely because an employer has a workplace policy that encourages or requires employees to report such conduct.

### a. Mr. Brennan spoke as a citizen when he made repeated complaints about matters of public concern.

Mr. Brennan spoke as a citizen when he made repeated complaints about (1) Defendants' racially discriminatory hiring/retention practices and comments; (2) Defendants' wasteful and fraudulent conduct regarding the procurement of policy body cameras; and (3) Defendants' directive to him to not comply with a City contract with Comcast. To be clear, Mr. Brennan worked as the Chief Information Officer in the City's OIT department and his day-to-day duties involved IT issues and projects. He did not work in the Integrity, Diversity, Human Resources or Equal Employment Opportunity Offices and his primary responsibilities did not involve making the complaints he made. The complaints Mr. Brennan made (involving City-wide racially discriminatory hiring practices; waste, fraud and illegality in the City's procurement of a costly and important project and waste and non-enforcement of a contract with Comcast) are serious issues of public concern as such conduct has a direct effect on the residents of Philadelphia (including their taxes and ability to obtain a job in City government). *See e.g. Rode v. Dellarciprete*, 845 F.2d 1195, 1201 (3d Cir. 1988)(reversing district court and holding complaints by employee about racial concerns or racial employment practices were entitled to First Amendment protection); *Walker v. City of New York*, 2002 WL 31051534, at *6 (E.D.N.Y. 2002)(holding that claims of disparate treatment complaints based on race constitute protected activity as to a First Amendment Retaliation claim).

### b. Defendants' retaliatory action was sufficient to deter a person of ordinary firmness from exercising his or her rights.

The second prong in a First Amendment retaliation claim requires a plaintiff to show "the alleged retaliatory conduct was sufficient to deter a person of ordinary firmness from exercising his First Amendment rights." *McKee v. Hart*, 436 F.3d 165, 170, (3rd Cir. 2006)(internal citations omitted). ***Courts have held that this threshold is low*** and that "[t]he effect of the alleged conduct on the employee's freedom of speech need not be great in order to be actionable, but it must be more than *de minimis*." *Id.* (internal citations omitted). The Third Circuit Court of Appeals has held that "a public employer adversely affects an employee's First Amendment rights when it refuses to rehire an employee because of the exercise of those rights or when it makes decisions, which relate to promotion, transfer, recall and hiring, based on the exercise of an employee's First Amendment rights." *Brennan v. Norton*, 350 F.3d 399, 419, (3rd Cir. 2003).

At first, in response to Mr. Brennan's complaints, Derenick-Lopez rolled her eyes at him and ignored him.  But almost immediately thereafter, she began subjecting him to antagonistic, hostile and rude treatment, including yelling and screaming at him during meetings, using employees from his department without even discussing it with him and failing to speak with him about projects.  Then, within 4 weeks of his final complaints of racial discrimination, Defendants terminated Mr. Brennan.  This conduct is more than sufficient to deter a person of ordinary firmness from exercising his or her rights.

### c. Mr. Brennan's complaints are causally related to this termination.

The third step of a First Amendment Retaliation claim requires courts to analyze whether the employee's speech was a substantial or motivating factor for the retaliatory acts. To prove the employee's speech was a substantial or motivating factor for the retaliatory acts "a plaintiff

31

usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link. In the absence of that proof, the plaintiff must show that from the evidence gleaned from the record as a whole the trier of the fact should infer causation." *Lauren v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir. 2007). A plaintiff is not required to show "but for causation;" rather, she is required to show that the "exercise of free speech rights played 'some substantial role' in the employer's decision." *Marrero v. Camden Cty. Bd. of Social Services*, 164 F.Supp.2d 455, 469 (D.N.J. 2001) (citing *Suppan*, 203 F.3d at 236); *Malone v. Economy Borough Municipal Authority,* 669 F.Supp.2d 582, 603 (W.D. Pa. 2009); *Brown v. Pa., Dep't of Corr.*, 2019 U.S. Dist. LEXIS 142132, *22-23 (MD Pa 2019).

In *Brown*, the plaintiff, a correctional officer, asserted that she was subjected to retaliatory conduct on January 13, 2015, a few weeks after her December 2014 complaints of wrongdoing. Id. at *28-29. In concluding that the plaintiff established the causal link element of her retaliation claim, the Court explained that the "timing of these events, in conjunction with the record as a whole, could lead a reasonable factfinder to conclude that Brown's reports of alleged wrongdoing were a substantial factor in the decision to take disciplinary action against her at the end of July 2015," including proof of a "'pattern of antagonism coupled with timing'" that is sufficient to allow a factfinder to infer that the defendants engaged in this conduct in retaliation for her many complaints..." *Id.*

### 1. Causal Link- Race Discrimination Complaints

Mr. Brennan relies on and hereby incorporates the evidence of causation set forth above as further proof of causation under this aspect of his claim.

### 2. Causal Link- Waste/Fraud Complaints

Mr. Brennan can establish a causal link between his complaints regarding Defendants' sham RFP and refusal to issue a competitive bid for the procurement of policy body-cameras via timing, antagonism and pretext.

Mr. Brennan was terminated within 8 months of his complaints to Defendants about the sham RFP and waste associated with their refusal to competitively bid the body-cameras project. What's more, Mr. Brennan testified to detailed and ongoing instances of antagonistic treatment from Derenick-Lopez, which occurred almost immediately after these complaints and continued into December 2017. Mr. Brennan was also scolded by Abernathy regarding his complaints at the May 2017 meeting. This timing and antagonism, especially when combined with the evidence of pretext (as set forth in detail above), clearly establishes the causal link element of this aspect of Mr. Brennan's claim

### 3. Causal Link- Contractual/Comcast Complaints

Mr. Brennan made complaints to Defendants about Comcast's failure to comply with the terms of its contract with the City and expressed his refusal to "take it easy" on Comcast (which would have allowed them to violate the terms of the contract without penalty). Mr. Brennan made these complaints to Defendant in November and December of 2017, within weeks of his termination. Thus, the timing between these complaints and his termination are unusually suggestive of retaliation. In addition, Defendants also subjected Mr. Brennan to blatant antagonism and animus regarding his complaints, including telling him to "take it easy" on Comcast so the City would not be perceived as anti-business. This persuasive evidence of timing, antagonism, combined with the evidence of pretext set forth above, establishes the causal link element of this aspect of Mr. Brennan's First Amendment claim.

For all these reasons, Defendants' Motion regarding this claim should be denied.

### 3. Mr. Brennan has also established his Pennsylvania Whistleblower claim.

43 P.S. §1423(a) provides in pertinent part:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

In 1986, the Pennsylvania Legislature enacted the Whistleblower Law, 43 Pa.C.S. §§ 1421-1428, to protect government employees from wrongful discharge and retaliation where the employee, in good faith, blows the whistle on the employer for acts of wrongdoing.

The Whistleblower Law expressly prohibits an employer from retaliating against an employee because of that employee's report of wrongdoing or waste by the employer, and an employee alleging a violation may bring a civil action for injunctive relief, or damages, or both. *Id.; Bailets v. Pa. Tpk. Comm'n*, 633 Pa. 1, 14, 123 A.3d 300, 307, 2015 Pa. LEXIS 1995, *19, 40 I.E.R. Cas. (BNA) 971 (Pa. Super. 2015).

The Whistleblower Law applies only to employers who are a "public body" but has been interpreted broadly to include employers who are funded in any amount by or through the Commonwealth or a political subdivision. Some apparent examples include counties, cities, townships, and school districts. *McMinn v. Pa. Rural Water Auth. Ass'n*, 2005 Pa. Dist. & Cnty. Dec. LEXIS 103, 4-15, 74 Pa. D. & C.4th 194, 198-205 (Pa. County Ct. 2005).

The law is designed to protect "whistleblowers," defined as "[a] person who witnesses or has evidence of wrongdoing or waste while employed and who makes a good faith report of the wrongdoing or waste, verbally or in writing, to one of the person's superiors, to an agent of the employer or to an appropriate authority." Section 2 of the Law, 43 P.S. § 1422.

The Whistleblower Law is not a mechanism to punish employers for retaliating against employees; instead it is "chiefly a remedial measure intended to 'enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing.'" *O'Rourke v. Commonwealth, Department of Corrections*, 566 Pa. 161, 175, 778 A.2d 1194, 1202 (2001). (citations omitted) A policy where employees were not permitted, under any circumstances, to go above defendant's head when they had concerns or questions but did not receive adequate answers to address their concerns or questions does anything but promote openness and compel compliance; in fact, it achieves just the opposite goal by ensuring that any suspected wrongdoing or waste will never be addressed, and compliance will never be achieved or enforced. *Id.*

The statute defines "employee" as "[a] person who performs a service for wages or other remuneration under a contract of hire . . . for a public body." 43 P.S. § 1422. "Wrongdoing" is defined as "[a] violation which is not of a merely technical or minimal nature of a Federal or State statute or regulation, of a political subdivision ordinance or regulation or of a code of conduct or ethics designed to protect the interest of the public or the employer." 43 P.S. § 1422. "Waste" under the PWL is defined as, "[a]n employer's conduct or omissions which result in substantial abuse, misuse, destruction or loss of funds or resources belonging to or derived from Commonwealth or political subdivision sources." *Id.*

An employee alleging a violation of this act must show by a preponderance of the evidence that, prior to the alleged reprisal, the employee or a person acting on behalf of the employee had reported or was about to report in good faith, verbally or in writing, an instance of wrongdoing or waste to the employer or an appropriate authority. *Gray v. Hafer*, 168 Pa. Commw. 613, 618-19, 651 A.2d 221, 224 (1994); *Sea v. Seif*, 831 A.2d 1288, 1291, 2003 Pa.

Commw. LEXIS 681, 5-6 (Pa. Cmwlth. Ct. 2003). The burden then shifts to the defendant to show a separate and legitimate reason for its actions only where plaintiff has satisfied the threshold showing of a causal connection. *O'Rourke,* 566 Pa. at 171-72, 778 A.2d at 1200.

### a. Mr. Brennan made good faith reports of waste and wrongdoing.

A "good faith report" is "a report of conduct defined . . . as wrongdoing or waste which is made without malice or consideration of personal benefit and which the person making the report has reasonable cause to believe is true." 43 P.S. § 1422; *see O'Rourke v. Commonwealth, Department of Corrections,* 566 Pa. 161, 175, 778 A.2d 1194, 1202 (2001)(finding that employee's report that supervisors at the Department of Corrections had knowledge that inmate employees were illegally selling meat from the prison kitchen to fellow prisoners and altering the inventory books to cover up the scheme constituted a good faith report of waste or wrongdoing); *see Zenak v. Police Ath. League of Phila.,* 2014 Phila. Ct. Com. Pl. LEXIS 449 (Pa. C.P. 2014)(finding that a Philadelphia police officer made a good faith report of either wrongdoing or waste when he complained to his employer about an alleged illegal asbestos abatement project); *see McMinn v. Pa. Rural Water Auth. Ass'n,* 2005 Pa. Dist. & Cnty. Dec. LEXIS 103, 74 Pa. D. & C.4th 194 (Pa. County Ct. 2005)(finding a good faith report established where a controller became concerned over some of the financial practices of defendant and complained about same to his supervisors and the employer's board); *Rodgers v. Pa. Department of Corrections,* 659 A.2d 63, 66 (Pa. Cmwlth. 1995)(finding that where an officer reported irregularities at the facility where he worked, including expenditure of unnecessary funds, dismissal of a worker for no apparent reason, requests to change or alter reports, and the use of inmates for personal reasons, following which his duties were reassigned, the complaint was sufficient to give rise to proof of protected activity).

36

In this case, Mr. Brennan made several reports of unlawful conduct, waste and wrongdoing, including complaints about Defendants' racially discriminatory hiring/retention conduct, Defendants' waste of tax payer money in failing to properly prepare or competitively bid a project for the procurement of police body cameras and Defendants' refusal to enforce the terms of its contract with Comcast and their directive to Mr. Brennan to "take it easy" on and allow Comcast to violate the terms of its contract with the City.

Defendants' racially discriminatory hiring/retention conduct violates federal and state law (including but not limited to Title VII, §1981, the PHRA and the PFPO).

Defendants' fraudulent and wasteful conduct of preparing a sham RFP which favored only one vendor over all others and Defendants' refusal to competitively bid the project (at the expense of tax payers) without conducting any investigation to determine the cost of issuing an RFP versus a cooperative purchasing agreement, are violations of Pennsylvania Procurement Code. *See* 62 Pa.C.S. § 2301 (requiring that "public employees discharge their duties impartially so as to assure fair competitive access to Commonwealth agency procurement by responsible contractors and that they conduct themselves in a manner that fosters public confidence in the integrity of the Commonwealth procurement process"); *see Bailets v. Pa. Tpk. Comm'n*, 633 Pa. 1, 15, 123 A.3d 300, 308-309, 2015 Pa. LEXIS 1995, *22, 40 I.E.R. Cas. (BNA) 971 (Pa. Super 2015). The record contains further evidence that Mr. Brennan provided Defendants with cost effective and beneficial alternatives to selecting Axon at any cost but that such alternatives were not investigated or accepted. *See* Plaintiff's Counter-Statement of Facts at $\pi$107-111. Instead, Defendant prepared a sham RFP that excluded every vendor except Axon and then failed to even competitively bid the project or determine whether proceeding via a cooperative purchasing agreement were cost effective and did not cause waste or unnecessary expenditures. Id.

Moreover, Defendants' insistence that Mr. Brennan ignore the contract franchise agreement between the City and Comcast and essentially allow Comcast to violate the terms without repercussion, at the expense of tax payers, is a legal contractual violation and thus waste. Defendants' directives to Mr. Brennan that he "take it easy" on Comcast by not enforcing the terms of a contract is a blatant example of serious wrongdoing and just the type of conduct intended to be rooted out under the PWL. *See* Plaintiff's Counter-Statement of Fact at π116-133.

### b. Mr. Brennan suffered an adverse employment action

It is undisputed that Mr. Brennan suffered an adverse employment action when he was terminated by Defendants on January 12, 2018.

### c. There is a causal link between Mr. Brennan's complaints and his termination.

The Pennsylvania Supreme Court has also held that a Whistleblower Law claimant must come forward with some evidence of a connection between the report of wrongdoing and the alleged retaliatory acts. *See Golaschevsky v. Department of Envtl. Protection*, 554 Pa. 157, 163, 720 A.2d 757, 759 (1998), though the court did not identify the precise type or nature of such evidence.

The employer's subsequent negative treatment of the employee, including subjecting the employee to a hostile work environment, less desirable job duties or negative performance evaluations is sufficient evidence to establish a causal nexus. *See O'Rourke*, 778 A.2d at 1197 (finding a sufficient nexus where, shortly after producing the report of wrongdoing, the plaintiff was subjected to a hostile work environment, assigned less desirable posts, and removed from a list which would have made him eligible for a pay increase); *Zenak v. Police Ath. League of Phila.*, 2014 Phila. Ct. Com. Pl. LEXIS 449, *3 (Pa. C.P. 2014)(finding a sufficient nexus where

the employee's supervisors retaliated against him in the form of negative performance reviews and threats of termination); *Rodgers v. Pennsylvania Dep't of Corrections*, 659 A.2d 63, 64, 1995 Pa. Commw. LEXIS 229 (Pa. Cmwlth 1995)(finding nexus when, shortly after making the complaints, plaintiff was placed on a less desirable shift and unfairly denied a transfer. In addition, his supervisors treated him in a hostile manner).  The timing of an employee's termination can also be evidence of a causal nexus. *McMinn v. Pa. Rural Water Auth. Ass'n*, 2005 Pa. Dist. & Cnty. Dec. LEXIS 103, 74 Pa. D. & C.4th 194 (Pa. C.P. 2005).

Mr. Brennan relies on and hereby incorporates herein the detailed and abundant evidence set forth above as proof of the causal link element of this claim as well as pretext.

As a result of the record evidence, Defendants' Motion regarding Mr. Brennan's PWL claim must be denied.

### 4. Defendants Kenney, Derenick-Lopez and Slusser are individually liable for Mr. Brennan's unlawful termination.

A plaintiff can sustain a § 1981 claim against individual defendants only if the individuals "intentionally cause[d] an infringement of rights protected by Section 1981." *Cardenas v. Massey*, 269 F.3d 251, 268 (3d Cir. 2001).  [A] claim seeking to impose personal liability under Section 1981 must be predicated on the actor's personal involvement and there must therefore be some affirmative link to causally connect the actor with the [violating] action. Accordingly, directors, officers and employees of a corporation may become personally liable when they intentionally cause an infringement of rights protected by Section 1981 [.] *Johnson v. Res. for Human Dev., Inc.*, 843 F. Supp. 974, 978 (E.D. Pa. 1994); *Hisey v. QualTek USA, LLC*, 2019 U.S. Dist. LEXIS 141260, *46, 2019 WL 3936555 (E.D. Pa 2019).

The Pennsylvania Whistleblower Law also permits individual liability against the individual Defendants. *See* 43 Pa. Stat. Ann. § 1422 (defining employer as a "public body" or

"individual" which receives money from a public body to perform work or provide services relative to the performance of work for or the provision of services to a public body); *Bailets v. Pennsylvania Tpk. Comm'n*, 633 Pa. 1, 16, 123 A.3d 300, 309 (2015)(an individual may be liable under the PA Whistleblower Law); *Tee Boyer v. City of Philadelphia*, No. CV 13-6495, 2015 WL 9260007, at *8 (E.D. Pa. 2015) (J. Dubois) (holding that a former partner of a police officer was an "employer" within the meaning of the Whistleblower Law (citing **Rankin**)); *See also Connearney v. Main Line Hosps., Inc.*, No. CV 15-02730, 2015 WL 9302912, at *8 (E.D. Pa. Dec. 22, 2015)(holding that individual supervisors can be held liable since "the Whistleblower Law allows an individual '[who] receives money from a public body to perform work or provides services to be held liable. 43. Pa. Cons. Stat. Ann §1422"); *Rankin v. City of Philadelphia*, 963 F.Supp. 463 (E.D.Pa.1997) (city employees could not avoid liability under Whistleblower Law by claiming they were not "employers" of whistleblower plaintiff; any person who is "an agent of a public body" is "employer" under law).

In addition, "[b]oth Pennsylvania and Philadelphia impose individual liability on any person who aids, abets, incites, compels or coerces, or directly or indirectly commits unlawful discrimination." *See Ahern v. Eresearch Tech., Inc.*, 183 F. Supp. 3d 663, 671 (E.D. Pa. 2016))(citing 43 Pa. Stat. Ann. § 955(e)[10]; Phila. Code. § 9-1103(h)); *Johnson v. Keystone Quality Transp. Co.*, 2018 U.S. Dist. LEXIS 12028 at *4 n.3 (E.D. Pa. 2018); *Stroud v. Susquehanna Cty.*, 2018 U.S. Dist. LEXIS 131672, *10, 2018 WL 3727388 (M.D. Pa 2018).

The record in this case demonstrates that Defendants Derenick-Lopez, Slusser and Kenney had knowledge of Mr. Brennan's protected activities and were involved in making the unlawful termination decision. Specifically, Derenick-Lopez clearly had knowledge of all of Mr.

---

[10] The PHRA prohibits "any person, employer, employment agency, labor organization or employee, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice ..." 43 P.S. §955(e).

40

Brennan's protected activities, treated him with extreme animosity as a result and led the charge to terminate him. Slusser also had knowledge of all of Mr. Brennan's protected activities (see Plaintiff's Counter-Statement of Facts at π103-105, 125-133, 135) and was also admittedly involved in the termination decision.

Lastly, Mayor Kenney was aware of Mr. Brennan's complaints regarding the waste and wrongdoing associated with the Comcast contract, as is evidenced by Derenick-Lopez telling him that the Mayor's office wanted him to "take it easy" on Comcast. *See* Plaintiff's Counter-Statement of Fact at π127-133. In addition, Defendants admit that Mayor Kenney was involved in the decision to terminate Mr. Brennan and that he was made aware (from Slusser and Derenick-Lopez) about the alleged issues with Mr. Brennan (*See* Exhibit M at p. 158:7-22) and there is further proof that Kenney, in fact, wanted Mr. Brennan to be let go. *See* Exhibit K. And, based on almost the same evidence previously presented, this Court has already ruled that "Kenney was more significantly involved [in Mr. Brennan's termination] -- Derenick-Lopez and Slusser testified that they met with Kenney to tell him why they wanted to terminate plaintiff before taking action, and Slusser said that she informed Kenney of concerns about plaintiff weeks before his termination. For these reasons, this case also differs from *Hankins v. City of Phila.*, No. 95-1449, 1996 U.S. Dist. LEXIS 13314, 1996 WL 524334, at *1-2 (E.D. Pa. 1996), in which the court determined that a mayor's approval of proposed changes to job classifications did 'not demonstrate that he has personal knowledge of the particular reasons why such changes were proposed or why staffing decisions of various agencies were made.' Moreover, Kenney possesses personal knowledge about any directives he gave to his staff regarding the Comcast contract or plaintiff's complaints about it." *Brennan v. City of Philadelphia*, 388 F. Supp. 3d

516, 520, 2019 U.S. Dist. LEXIS 125590, *8 (E.D. Pa. 2019); *See also* Memorandum Opinion at Docket Entry No. 30.

For all of these reasons and based on Mr. Brennan's detailed counter-statement of facts, there is more than sufficient evidence on which to hold Defendants Kenney, Derenick-Lopez and Slusser individually liable for violations of §1981, the PWL, the PHRA and the PFPO.

## III.    CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Honorable Court deny Defendants' Motion in its entirety.

Respectfully submitted,

**KARPF, KARPF & CERUTTI, P.C.**

By:      */s/ Jeremy M. Cerutti*
            Jeremy M. Cerutti, Esq.
            3331 Street Road
            Two Greenwood Square
            Suite 128
            Bensalem, PA 19020
            (215) 639-0801
            Attorney for Plaintiff

Dated: November 8, 2019

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CHARLES BRENNAN | : |
| | :     CIVIL ACTION |
|      Plaintiff, | : |
| | :     No.: 18-1417 |
|     v. | : |
| | : |
| CITY OF PHILADELPHIA, ET AL. | : |
| | : |
|      Defendants. | : |
| | : |

## CERTIFICATE OF SERVICE

I certify that on the date set forth below I served Defendants with Plaintiff's Memorandum of Law in Opposition to Defendants' Motion for Summary Judgment via ECF:

Christopher H. Rider, Esq.
City of Philadelphia Law Department
1515 Arch St. 16th Floor
Philadelphia, PA 19102

*/s/ Jeremy M. Cerutti*
Jeremy M. Cerutti

Dated: November 8, 2019

43